## WILLIAMS VS. DORRIS et al.

HOMESTEAD:  *Occupancy and dwelling essential to.*

A mere intention to build a dwelling house on a tract of land and occupy it as a homestead, does not impress it with that character, until the intention is carried into effect. A house or dwelling upon the land is necessary to place it within the protection of the law as a homestead.

APPEAL from *Jefferson* Circuit Court in Chancery.

Hon. J. A. WILLIAMS, Circuit Judge.

*H. Carlton,* for appellant.

*Carroll & Jones,* and *J. M. Moore, contra.*

ENGLISH, CH. J. :

On the 1st February, 1873, Wm. P. Williams (and wife) executed a deed of trust, conveying to Wm. F. Owen, as trustee, the west fractional half of section 5, and the northeast fractional quarter of section 6, township 6 south, range 7 west, situate in Jefferson County, known as the New Gascony place, containing by the original surveys about 430 acres, to secure the payment of $5,000, evidenced by three notes made by Williams to George P. Dorris for equal sums, payable annually, with power to the trustee to sell the premises in default of payment.

On the 27th March, 1874, Williams (and wife) by deed with covenants of warranty, conveyed an undivided half of the lands to John Roth.

Owen, the trustee, died, and John L. Buck was substituted by an order in chancery, and on the 13th of February, 1875, he

advertised the lands for sale, under the deed of trust, to pay the two notes then matured.

Williams filed the bill in this case to enjoin the sale, claiming an undivided half of the land as a homestead, under the exemption clauses of the Constitution of 1868, praying that the lands be partitioned between him and Roth, and that his half be set apart to him, and protected as a homestead, etc.

Dorris answered the bill, controverting the homestead claim of Williams, and made his answer a cross bill, praying the foreclosure of the trust deed, and sale of the lands for the payment of the secured debt. All of the persons interested in the lands were made parties.

On the pleading and evidence, the court found that the homestead claim of Williams was not well founded, and decreed in accordance with the prayer of the cross bill of Dorris, directing the undivideded half of the lands still held by Williams to be first sold for the protection of Roth, etc., and Williams appealed.

It is clear from the evidence that, though appellant was a married man, and the head of a family, he was not residing on or occupying any part of the lands, with his family, at the time the deed of trust was executed (1st of February, 1873). He had then no sort of a family dwelling or home on the lands. He had a storehouse on the lands, and was there in the day time, attending to mercantile business, but resided with his family at the house of Major Hall, on another place, about two miles away. In December, 1872, he purchased lumber at Pine Bluff, and contracted with Madding to build him a dwelling house at New Gascony ; the lumber was taken down the Arkansas River on a flat boat built for that purpose, and placed upon the land in controversy in March, 1873 (after the execution of the deed of trust), the dwelling house was completed in August following, and appellant moved into it, with his family, and continued to occupy it until

the filing of this bill.    Before the execution of the deed of trust,.
he had expressed to his clerk, and some other persons, perhaps,.
his intention to build him a dwelling on the land, and claim it as
a homestead, but such intention was not made known, it seems,.
to Dorris when or before the deed of trust was executed, or to·
Roth, when he sold to him an undivided half of the lands.

Sec. 2, Art. xii, Constitution of 1868, declares that the home-
stead of any resident of the State, who is a married man or head
of a family, shall not be incumbered in any manner while owned
by him, except for taxes, etc., etc.

This section does not define the homestead, otherwise than by
the use of the term which has a settled meaning.    *Tumlinson* v.
*Swinney*, 22 Ark., 402.

Section 3 limits the homestead exemption to 160 acres of land'
in the country, and the dwelling and appurtenances thereon, to·
be selected by the owner, or, in lieu thereof, any lot in a city,
town or village, with the dwelling and appurtenances thereon,.
owned and occupied by any resident of the State, etc.    See
*Greenwood and Son* v. *Maddox & Toms*, 27 Ark., 648.

The homestead is the place of a home or house—that part of a
man's landed property which is about and contiguous to his
dwelling house.    A homestead necessarily includes the idea of a.
house for residence, or mansion house.    The dwelling may be a
splendid mansion, a cabin, or tent.    If there be either, it is un-
der the protection of the law, but there must be a home resi-
dence before it, and the land on which it is situated, can be
claimed as a homestead. *Tumlinson* v. *Swinney, supra; McKenzie*
v. *Murphy*, 24 Ark., 157.

The married man or head of a family must occupy the land—
it must be his home or dwelling place—to impress upon it the
character, and place it under the protection of the law, as a
homestead.    *Johnson et al.* v. *Turner, adm'r.*, 29 Ark., 280;

*Elston & Green* v. *Robinson,* 23 Iowa, 210; *Charless et al.* v. *Lamberson,* 1 Iowa, 435.

The solicitor of appellant relies upon a remark of Ch. J. Hemphill, in *Franklin* v. *Coffee,* 18 Texas, 417, to sustain his homestead claim.

In that case Franklin and wife claimed a tract of land as a homestead which had been levied on and sold under an execution. Franklin had never resided or dwelt upon the land—his home was not upon it. The court held that it was not protected from execution as a homestead. Hemphill, Ch. J., who delivered the opinion of the court, after defining the term homestead—saying it necessarily includes the idea of a house for residence or mansion house—and deciding that Franklin's homestead was not well founded, remarked that it would not be "necessary to secure the exemption, that a house should be built or improvements made. But there must be a preparation to improve, and this must be of such a character and to such extent as to manifest, beyond doubt, the intention to complete the improvements and reside upon the place as a home."

After other remarks, he added: "In this case there was no house or home upon the land. The plaintiff had not resided there before or since his marriage. He had made no preparation or done any acts which would evince a fixed intention and purpose to select and appropriate the place as a home."

In this case it is insisted for appellant that he had made preparation to build his dwelling house on the land before he executed the trust deed.

It is true that it appears from the evidence that he had purchased lumber at Pine Bluff, and employed a man to build him a house. But he had made no preparation on the land for building his house. The lumber was not brought upon the land, nor the dwelling commenced until after he had executed the deed of trust.

In *Elston & Green* v. *Robinson*, 23 Iowa, 211, the court said: "The fact that the owner commenced a building upon a lot before the right of the creditor attached, but which, by no other act of the owner, had been impressed with the homestead character, would not make the same exempt. Under our statute there is an unbroken series of decisions that occupancy, the use of the house by the family as a homestead, are essential requirements to impress the property with the character of a homestead. A mere intention to occupy it, though subsequently carried out, is not sufficient."

In *Lee* v. *Miller*, 11 Allen (Mass.), 38, the claimant had recorded a declaration in writing of his intention to make the premises a homestead, and commenced to build a house, but had not occupied the premises as a family residence when the creditor's right attached, and it was held that the premises were not exempt from execution.

The decree of the court below must be affirmed.