RICHARDSON V. ADLER, GOLDMAN & CO. AND RICHARDSON V. SAME.

1. EXEMPTION: *When must be claimed.*
   *Quere.* Can a judgment debtor claim his exemption of attached property after judgment of condemnation in the attachment suit?

2. SAME: *Of partnership property.*
   The members of an insolvent .firm are not entitled to the exemptions allowed by law, out of the partnership property, after it has been seized to satisfy the demands of the creditors of the firm.

3. SAME: *Right of must exist at commencement of lien.*
   The right to exemption as head of a family must exist at the time the creditor's lien attaches. To become a head of a family after an attachment is levied on the property, will not exempt the property from sale under a judgment of condemnation. The judgment lien relates to the levy of the attachment, and perfects the inchoate charge created by the levy, and cannot be displaced by any change in the status of the debtor.

APPEAL from *Izard* Circuit Court.
Hon. R. H. POWELL, Circuit Judge.

*Clark & Williams*, for appellant in the J. B. Richardson case.

It is by no means necessary that a man should be married or have children to be the head of a family, although the having a wife is possessing a family. *42 Ark.*, *532; Thompson H. & Ex.*, secs. *44-5, and 72; 31 Tex*, *680; 21 Ill.*, *40-5; 6 Bush.*, *11; 27 Ark.*, *658.*

Is a married man to be cut off from his homestead, whenever his wife dies, in case he has no children? If so, then if the husband die, the wife without children or dependents, also loses her right. *33 Ark.*, *762; 6 Allen, 71.* A homestead once acquired and still occupied, is not de-

feated by loss of wife and children. *Supra,* and *12 Allen, 34; 56 Geo., 392; Thomp. H. & Ex., sec. 72 and note.*

But Richardson was re-married and the head of a family before the execution was levied. An unmarried man keeping house, with persons dependent on him for support, is the head of a family; nor is it necessary that he be legally bound to support them; if morally bound, it is sufficient. *Thomp. H. & Ex., secs. 58, 59, 60, 61; 42 Ark., 532.* A temporary removal has never been held an abandonment. *37 Ark., 283.*

The possession of the land, and the building of the house, under the verbal agreement, took the case out of the statute of frauds, and he could have compelled his brother to convey. *9 Wall., 1; 43 N. Y., 34; 3 Gill., 157; 1 Binn., 378; 9 Pet., 221; 45 N. Y., 419; 35 Iowa, 512; 3 Washb., 235.* Nor is it material that the improvements were paid for out of partnership funds. The money was charged to him and became his own, but if not the firm gave it to him, and it does not alter the case. An equitable title will support a homestead. *Thomp. H. & Ex., sec. 170-174.*

(*In the J. R. Richardson case.*)
Appellant kept house with a widowed sister dependent on him for support. This gave him a right to homestead. *Thomp. H. & Ex., sec. 69; 20 Mo., 75; 27 Ark., 658; 32 Wis., 391.* Also to his exemption of personal property. We concede that he could claim no exemption in the partnership property.

*Robert Neill,* for appellees, Adler, Goldman & Co., in J. B. Richardson's case.

Appellant was not the *owner* of the land—he had neither legal nor equitable title. The land belonged to J.

R. Richardson, and the house paid for out of partnership funds. The agreement was upon a contingency which never happened, and never could happen now, and is too vague and indefinite for a court of chancery ever to have enforced it.

It is clear appellant was not entitled to exemption in the partnership property. *Thomp. H. & Ex., sec. 194, and cases cited; 3 Dillon, 290.*

(*In the J. R. Richardson case.*)

The sister was *not* dependent upon him for support. She had real estate and personalty of her own, and had an income; she also had other relatives keeping house in the county. He was not entitled to a homestead merely from the fact she *resided* with him. *42 Ark., 541.*

SMITH, J. Adler, Goldman & Co. recovered a judgment against J. R. Richardson & Bro., a firm composed of John R. and Joseph B. Richardson, for $3,559.59. An attachment, which had been previously levied upon all the property of the firm, as well as the individual property of the partners, was at the same time sustained.

Upon the issue of a special execution for the sale of the attached property, the said John R. and Joseph B. filed, in the office of the clerk of the court from which the execution issued, their separate schedules under the exemption laws, setting out all the partnership assets, as well as their own private property, and claiming the exemptions which pertain to heads of families, viz.: a homestead and $500 worth of personal property, which they selected. The clerk granted a supersedeas as to all of the property so claimed as exempt. And the judgment creditor moved the circuit court by petition to quash the supersedeas. The grounds of the several motions were that part of the

personal property claimed by each of the defendants was partnership property; that John R. was not at any time a married man, nor the head of a family; nor was Joseph B. such at the time the attachment was levied ; and moreover that Joseph B. was not in any sense the owner of the house and lot claimed by him as a homestead.

The evidence tended to show that John R. had been living in a house built by him on his own land, and had been keeping house there for a number of years before this controversy arose. He had no wife nor children ; but a widowed sister, who was in feeble health, and measurably dependent on him for support, resided with him.

The residence claimed by Joseph B., as a homestead, had been built with partnership funds ou a lot of four acres in the town of Melbourne, which belonged to John R., and had been occupied by Joseph B., his wife and her sister, for several years. But his wife having died, the establishment had been broken up before the attachment was levied, the house was rented, and the sister in-law sent off to board. But he had married again after the rendition of the plaintiff's judgment and was living in the house when he filed his schedule.

There was no contract in writing between the partners in relation to the lot, but a parol understanding that, when the partnership should be wound up, Joseph B. was to take the house and some ground as part of his share of the assets of the firm. He claimed one acre around and near the house.

The circuit court found the facts to be: That John R. Richardson was a resident of Arkansas, was the head of a family, and was entitled as such to hold the property claimed as a homestead, as well as all the personal property, except a mule and planing machine and fixtures,

which he could not hold as exempt because it was partnership property.

The supersedeas was therefore quashed as to the partnership property, and sustained as to the other personal property and the homestead.  From its judgment both parties appealed.

In the other case the court stated the facts to be:

*First.*  That Joe B. Richardson was not a married man, nor head of a family at the time of the levy of the attachment and the rendition of the judgment.

*Second.*  That the land upon which the said residence claimed as homestead was situated, was, at the date of the schedule filed, the property of John R. Richardson, and that appellant had no title, legal or equitable, thereto. That the residence thereon was partnership property. And it declared the law to be that appellant was not entitled to claim the homestead, nor the partnership personal property above named.  That of the property attached he was entitled to claim as exempt the amount of two hundred dollars' worth, and no more, but discharged the supersedeas in toto.  Richardson appealed.

It is doubtful whether, after a judgment of condemnation in the attachment suit, it is still competent for the defendant to set up his claim of exemption out of the property attached.  The safer course is to move the court, while the suit is pending, to quash so much of the sheriff's return as shows a levy of the writ upon exempt property; as was done in *Grubbs v. Ellison, 23 Ark., 287.*  Compare on this point, *Drake on Attachment, sec. 244 a; Waples on Attachment, pp. 164-7; Thompson on Homesteads and Exemptions, sec. 826; State v. Manly, 15 Ind., 8; Perkins v. Bragg, 29 ib., 507; Haas v. Shaw, 91 ib., 385; State, ex rel. Kahoon v. Krumpus, 13 Neb., 321; Close v. Sinclair, 38 Ohio St., 530; Willis v. Matthews, 46 Texas, 478; with*

1. Quere. When must exemption be claimed.

the reasoning of the court in *Turner v. Vaughan, 33 Ark.,
454; Miller v. Sherry, 2 Wallace, 237; Haynes v. Meek, 14
Iowa, 320.*

But since the creditor has not pleaded the previous ad-
judication in bar of the debtor's subsequent claim to hold
a portion of the property as exempt, nor insists here upon
any benefit thereof; since, moreover, section 3006 of
Mansfield's Digest is somewhat ambiguous in regard to the
time and manner of claiming and ascertaining exempt
property which is attached; and since the parties and
their counsel and the court below have acted upon the
supposition that the claim may be preferred at any time
before the property is actually sold, we pass this question
without determining it.

2. EXEMP-
TION:
None of
partner-
ship prop-
erty.

The members of an insolvent firm are not entitled to
the exemptions, allowed by law, out of the partnership
property after it has been seized to satisfy the demands of
creditors of the firm. This proposition is well settled
both upon reason and authority. The interest of each
partner in the partnership assets is his portion of the re-
siduum after all the liabilities of the firm are liquidated
and discharged. Property belonging to the firm cannot
be said to belong to either partner as his separate prop-
erty. It is contingent and uncertain whether any of it
will belong to him on the winding up of the business and
the settlement of his accounts with the firm. "Joint
property is deemed a trust fund, primarily to be applied
to the discharge of partnership debts, against all persons
not having a higher equity. A long series of authorities
has established this equity of the joint creditors, to be
worked out through the medium of the partners; that is
to say, the partners have a right *inter sese*, to have the
partnership property first applied to the discharge of the
partnership debts, and no partner has any right, except to

his own share of the residue, and the joint creditors are, in case of insolvency, substituted in equity to the rights of the partners, as being the ultimate *cestuis que trust* of the fund to the extent of the joint debts." *Story's Eq. Jur.*, sec. 1253; *Pond v. Kimball*, 101 Mass., 105; *Gaylord v. Imhoff*, 26 Ohio St., 317; *Giovanni v. First Nat. Bank of Montgomery*, 55 Ala., 305; *In re Handlin*, 3 Dillon, 290.

To sustain the finding of facts, that John R. Richardson was the head of a family at the date of the levy of the attachment, while Joseph B. was not—the record contains abundant testimony. The subsequent marriage of Joseph B. had no effect on the rights of the parties. The lien relates back to the levy of the attachment, creating from that moment an inchoate charge, which was perfected by the rendition of judgment and which could not be divested by any change in the status of the parties. *Frellson v. Green*, 19 Ark., 376; *Harrison v. Traden*, 29 ib, 85; *Huxly v. Harold*, 62 Mo., 516.

*3. Right to exemption must date with lien.*

Furthermore, Joseph B. Richardson was not the owner of the house and lot claimed by him as a homestead, within the meaning of section 5, of article 9, Constitution of 1874. The legal title of the tract of four acres, of which it formed a part, stood in the name of his partner, who had, very recently before, treated it as his own by executing a deed of trust upon the whole of it. And the house was built with partnership funds. The verbal contract between the partners was too loose and indefinite to give any rights which a court of justice would protect and enforce. No price was mentioned, and the dimensions of the lot were not fixed. The consummation of the purchase depended upon two conditions: First, a settlement of the partnership; and second, that upon such settlement something should be due Joseph B. as his share of the assets. Neither of these contingencies has arisen. No

4–46

settlement of the partnership has been had; nor are there any effects to be divided between the partners, the concern being largely in debt.

The judgments in both cases are in all things affirmed.