## ROBSON *v.* HOUGH.

### Opinion delivered November 26, 1892.

1. *Homestead—Tenancy in common.*

   A tenancy in common will support a homestead exemption, without exclusive possession by the tenant who claims the privilege.

2. *Homestead—When right attaches.*

   When real estate descends to several persons as tenants in common, one of whom is married and residing on the land at the ancestor's death, intending to continue his residence upon it when the descent is cast, the privilege of the homestead attaches to his interest in the land the instant the estate vests in him, and precludes his creditor from acquiring a judgment or execution lien upon the land.

3. *Homestead—Leasehold estate.*

   A leasehold estate is sufficient to support a homestead exemption.

4. *Homestead—Abandonment.*

   Where the claimant testified that he had moved his family from the homestead temporarily, in order to be near a saw mill at which he expected to and did obtain work, a finding that he had not abandoned the homestead is sustained by the evidence.

Appeal from Phillips Circuit Court.

GRANT GREEN, JR., Judge.

Robson, Block & Co. obtained judgment in 1888 against N. A. Hough, and in 1891 procured an execution to be levied upon his undivided interest, as one of the four heirs of his mother, in certain lands which had descended from her. He filed a schedule, claiming that, being the head of a family, the land constituted his homestead. The court found that the land was exempt, and awarded a *supersedeas* to stay the execution. The sufficiency of the evidence to sustain the finding is the only question raised on the appeal.

Hough testified as follows:

"I am a married man and head of a family, and resident of the State of Arkansas and County of Phillips,

and was married and resided as aforesaid at the time of the rendition of the judgment herein. My home is on the land in controversy, and was at the time the judgment was rendered, and is now and has been ever since that time. My mother died February 13th, 1890, and I inherited the land levied on from her. During the early part of the year 1890, I had rented a portion of the place from my mother. There was a mortgage on the place due Francis Smith, Caldwell & Co., given by my mother, and after her death, the heirs, who were all of age, agreed that the proceeds of the place should go to paying off the mortgage, and I undertook to carry out the agreement and pay the same amount that I had agreed to pay my mother before her death. I paid to my brother, L. Hough, $130 at one time, which amount was sent by him to Smith, Caldwell & Co. I afterwards paid $75. The land in controversy was all the land my mother owned at her death. My home was on the land in controversy when the judgment was rendered, and it was my home when the execution was issued and levied, and my home is there now. The land is worked by tenants. Some time in the early part of 1890 I moved my family temporarily to Poplar Grove, which is about two miles from the land, in order that I might be more convenient to a saw mill, at which I expected to and did get work. I rented the place for $300 from my mother for the year 1890, and was living on it at the time of her death." No other testimony was introduced.

*Palmer & Nicholls* for appellants.

1. Appellee could not be a tenant and own the land at the same time. No step had even been taken to have partition of the land, and his share set apart to him. At the time of the death of his mother, he was a tenant, and on her death the lien of the judgment attached, and was prior to the subsequent claim of homestead. 43 Ark. 107.

2. Appellee, being a tenant in common, could not claim as a homestead his undivided interest in the lands. 27 Ark. 648.

3. The character of a homestead must have been impressed upon the land prior to the attaching of the lien of the judgment. 33 Ark. 399; 31 *id.* 145; 41 *id.* 94; 29 *id.* 280; 46 *id.* 43; 51 *id.* 84; 42 *id.* 175.

*Quarles & Moore* for appellee.

1. The law does not require that the appellee shall before trial take steps to have partition made and his interest set apart to him. 27 Ark. 648; Acts 1887, page 90; 39 Ark. 301; 35 *id.* 49; 41 *id.* 94; 54 *id.* 13. A tenancy in common is sufficient to support a claim for homestead. 41 Ark. 95; 54 *id.* 13.

2. Temporary absence does not defeat a homestead claim. 41 Ark. 309; 37 *id.* 283; 52 *id.* 91.

COCKRILL, C. J.. An estate in common with others is sufficient to support a homestead exemption, without exclusive possession by the tenant who claims the privilege. *Ward* v. *Mayfield*, 41 Ark. 94; *Thompson* v. *King*, 54 *id.* 9.

1. Homestead in estate in common.

When real estate decends to several persons as tenants in common, one of whom is married and residing on the land with his family at the ancestor's death, intending to continue his residence upon it as a home when the decent is cast, the privilege of the homestead attaches to his interest in the land the instant the estate vests in him, and precludes his creditor from acquiring a judgment or execution lien upon the land, to be asserted as superior to the homestead right.

2. When right of homestead attaches.

There is no complaint of the judgment, except that it is not warranted by the proof. The general finding in favor of the appellee is as effective as a special finding of all the facts stated above would have been. The evidence warranted such a special finding. The same presumptions are indulged as though the finding were

the verdict of a jury. *Jones* v. *Glidewell*, 53 Ark. 161.

3. Homestead in leasehold estate.

The appellee was the tenant of the ancestor when the latter died, and that fact is relied upon to cut off the homestead exemption. It tends to strengthen the right. A leasehold estate is sufficient to support the exemption. The testimony warranted the finding that the appellee had established his home on the land under that estate. The addition to his estate which he acquired by inheritance did not make the place any the less his home or subject it to the judgment or execution lien. No interest of a debtor in his homestead can be subjected to the creditor's judgment.

4. As to abandonment of homestead.

The question as to the debtor's abandonment of his homestead was submitted to the court and determined against the creditors on the testimony. The finding on that score also is sustained by the evidence.

Affirm.