## TILLAR v. BASS.

### Opinion delivered January 14, 1893.

1. *Homestead—Intention to occupy—Occasional occupancy.*
   Neither the intention of the owner of land to occupy it as his homestead, nor his occasional occupancy of it, as during harvest for the purpose of gathering his crops, will be sufficient to impress it with the character of a homestead if his actual home residence was elsewhere.

2. *Occupancy after seizure under execution.*
   Occupancy of land as a residence after levy of an execution thereon, will not exempt the land from sale under the execution.

3. *Construction of homestead act of 1887.*
   The act of 1887, ch. 64, which provides that if a debtor " does not reside on his homestead and is the owner of more land than he is entitled to hold as a homestead, he * * shall select the same before sale," does not undertake to say what shall constitute a homestead, nor that land occupied as a residence by the owner after seizure under process against him shall, by reason of such occupancy, become exempt from sale under such seizure and process.

Appeal from Desha Circuit Court.

JOHN M. ELLIOTT, Judge.

Tillar & Stanley recovered judgment against Commodore Bass, and procured an execution to be levied upon certain land belonging to him. Defendant filed a schedule with the clerk of the circuit court, claiming the land exempt as his homestead. The clerk sus-

tained the claim and issued a supersedeas staying the execution. Plaintiffs applied to the circuit court, which sustained defendant's right of homestead. The evidence is stated in the opinion. Plaintiffs have prosecuted this appeal.

*C. H. Harding* and *W. S. McCain* for appellants.

1. The debtor's right of homestead must antedate the creditor's execution lien. 46 Ark. 43; 51 *id*. 84; 42 *id*. 175.

2. Appellee had a *home* on an adjacent tract of land owned by his wife. The burden of showing a change of home to the tract in question is upon him. He has not done so. 43 Ark. 20; 52 *id*. 547.

3. This tract, being detached from his homestead, cannot be claimed as exempt. 55 Ark. 303.

4. His wife had a homestead in her own right. 54 Ark. 9; 46 *id*. 159. There cannot be two homes. This case is similar to 31 Ark. 466; 42 *id*. 175.

*Pindall & Rogers* for appellee.

1. The facts set out are sufficient to constitute the tract the appellee's home.

2. But under the act of 1887 (Acts 1887, page 90), a homestead may be claimed after sale. 55 Ark. 55. It is sufficient, under the act, if the claimant resides upon the land at the time of filing the schedule.

BATTLE, J. An intention of the owner to occupy lands as a homestead is not sufficient to impress it with that character. The constitution of 1874, in declaring of what a homestead shall consist, says: "The homestead outside of any city, town or village, owned and *occupied as a residence*, shall consist of not exceeding one hundred and sixty acres of land, with the improvements thereon, to be selected by the owner," etc. Again it says: "The homestead in any city, town or village owned and *occupied as a residence*, shall consist of not

exceeding one acre of land, with the improvements thereon, to be selected by the owner," etc. From this language it is obvious that actual occupancy as a residence is necessary to give a lot or tract of land the character of a homestead within the meaning of the constitution of 1874.

In *Williams* v. *Dorris*, 31 Ark. 466, Chief Justice English, in defining what a homestead is, said : It "is the place of a home or house—that part of a man's landed property which is about and contiguous to his dwelling house. A homestead necessarily includes the idea of a house for a residence, or mansion house. The dwelling may be a splendid mansion, a cabin, or tent. If there be either, it is under the protection of the law, but there must be a *home residence* before it, and the land on which it is situated, can be claimed as a homestead." *Tumlinson* v. *Swinney*, 22 Ark. 402 ; *McKenzie* v. *Murphy*, 24 Ark. 157 ; *McCrosky* v. *Walker*, 55 Ark. 303.

In *Williams* v. *Dorris*, *supra*, the court held that the land in controversy in that action was not the homestead of Williams on the first of February, 1873. The facts in that case were as follows : Williams was a married man, and the head of a family, and did not, at that time, reside on or occupy any of the land in controversy in that action with his family. He had expressed an intention to build a dwelling house for himself on it, and to claim it as a homestead. But at the time mentioned he had no sort of a family dwelling or house on it, "and was there in the day time, attending to mercantile business, but resided with his family at the house of Major Hall, on another place, about two miles away. In December, 1872, he purchased lumber at Pine Bluff, and contracted with Madding to build him a dwelling house at New Gascony," where the land is ; "the lumber was taken down the Arkansas river on a flat boat built for that purpose, and placed upon the land  *   *  in March, 1873.

The dwelling house was completed in August following," and Williams moved into it, with his family, and occupied it as a residence.   Because he did not actually occupy it as his residence on the first of February, 1873, the court held that it was not his homestead at that time ; and that the intention to build on it and occupy it as a homestead, conceived before that time and carried into execution subsequently, was not sufficient to give it the character of a homestead on that day.

In *Patrick* v. *Baxter*, 42 Ark. 175, an execution was levied on the land in controversy in that action.   At the time of the levy Patrick "was building a house on it, with the view of making it a home for himself and his aged mother, whom he was supporting, his father being dead."   He was not living on it, and did not complete the house and move into it until after the execution was levied on the land.   This court held that "when the execution was levied he had not impressed upon the land the character of a homestead ; " that " it was not his home or dwelling place ; " and that it was subject to sale under the execution.

The execution was levied on the land in controversy in this cause on the 21st of March, 1891.   About seventeen years before that time, appellee acquired title to the same.   About the same time his wife became the owner in her own right of a tract of land about a mile or three-quarters of a mile from it.   He made improvements upon her land, and moved and resided upon it, with his family, about five or six years, when he moved to Garland county, on account of the bad health of his wife, and resided there, with his family, about five years.   While in Garland county, he bought the property upon which he resided.   He returned to Desha county, where the land in controversy is, while he was residing in Garland, and built a house and cleared a field upon his land.   His wife's health having improved, he and his family returned

to Desha. Although he then had a house on his own land, he did not move into it, but went to his father-in-law, and lived with him a short time, because his wife's house was occupied by a tenant. When the tenant vacated, he and his family moved into her house, instead of his own. Most of the time after his return, he had a bed in his house, and occasionally slept there ; sleeping there, mostly, during crop time, looking after the crops he had growing on his land and protecting them against stock.

His land was and is in Clayton township, and his wife's was in Jefferson township. During the time his family occupied his wife's house, elections were held in these townships, and he voted at the precinct in Jefferson.

His house became "dilapidated," and he built a new one, which he completed after the election in the fall of 1890. After this he moved the bed that was in the old house, together with the cooking utensils, consisting of a skillet, coffee pot and frying pan, into the new house. This was in the year 1890—in the fall—but he did not move his family at that time, because of his wife's condition. He "staid" in the new house while he was gathering his crop. He moved his family into it after the 21st of March, 1891, when the execution was levied, which was as soon as his wife's condition would permit.

He testified that his intention, during the entire time he owned it, was to make his land his home, and that he "considered" it his home after he built the new house and moved his bed. But his occupancy before and after he built the new house, and until he moved his family, was of the same character, he working and sleeping there while cultivating and gathering crops. There was no evidence that he moved his household goods, domestic animals and other property, which usually attend the change from one to another home in the country. His family remained away. His stay was more like camping

than a residence. It was not home-like. In short, there was no evidence to show that he actually and in good faith occupied his land as a residence before the levy of the execution. His intention to do so at a future time, and failure on account of his wife's condition, did not endow it with the character of a homestead. It was, nevertheless, subject to sale under execution at the time it was levied on.

2. Occupancy after levy not sufficient.

Appellee did not acquire the right to hold his land exempt from seizure or sale under the execution issued against him by the occupancy of the same as a residence after the levy. Such occupancy did not relieve it of the levy, or exempt it from sale under the same. *Patrick* v. *Baxter*, 42 Ark. 175; *Richardson* v. *Adler, Goldman & Co.* 46 Ark. 43; *Reynolds* v. *Tenant*, 51 Ark. 84.

3. Construction of homestead act of 1887.

But appellee insists that he and his family occupied his land as their residence when he filed his schedule claiming it as a homestead; and that, under the act of March 18, 1887, this was sufficient to entitle him to hold it as such. But this contention is not sustained by the act The whole object and effect of that act are to prescribe how valid instruments affecting homesteads shall be made, and when and by whom the homestead may be selected. It does not undertake to say what shall constitute a homestead, or that land occupied as a residence by the owner, after seizure under process against him, shall, by reason of such occupancy, become exempt from sale under such seizure and process. There is nothing in it inconsistent with the rule we have stated. Acts of 1887, p. 90.

The judgment of the circuit court is, therefore, reversed, and the cause is remanded for a new trial.