MERRILL *v.* HARRIS.

Opinion delivered June 4, 1898.

HOMESTEAD OF MINOR—SALE BY PROBATE COURT.—A probate court in which a guardianship of certain minors is pending has the power to order the sale for their benefit of the homestead left them by their surviving parent. (Page 356.)

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

*Hill & Auten,* for appellant.

The only possible excuse for the sale of the homestead of a minor is to obtain funds for his education and support. Sand. & H. Dig., §§ 3606 *et seq.* The only case where the probate court has jurisdiction over the homestead is in cases where it exceeds the limit. Sand. & H. Dig., §§ 3698–3701. It can neither be sold to pay debts, nor be partitioned. 49 Ark. 75; 53 Ark. 504; *ib.* 400; 51 Ark. 429; 56 Ark. 563. The probate court has no right, either by statute or constitution, to deal with homestead estates. 51 Ark. 563; Const. Ark. § 34, art. 7; 53 Ark. 400; 52 Ark. 219. Creditors cannot reach a homestead estate of minor children; nor can they waive or abandon it. 29 Ark. 633; 47 Ark. 510; 37 Ark. 316. This sale is void, because: (1) if the sale of the right is valid at all, it, *ipso facto,* terminates the estate, and nothing is left to be conveyed by the guardian. 47 Ark. 452; 51 Ark. 432; 49 Ark. 504; (2) there is no rule by which a division of the proceeds could be effected; (3) creditors have rights which must be respected. 53 Ark. 400; Waples, Hom. & Ex. p. 643.

*Ratcliffe & Fletcher,* for appellees.

Homestead descends to minor heirs in all respects as does other property, except that it is exempt from sale for the debts of the ancestor. It is to be used for the benefit of the minor, as a means of his support and education, when necessary. 29 Ark. 636; 47 Ark. 510. The case of *O'Connor* v. *Hindman,*

54 Ark. 627, recognizes the jurisdiction of the probate court to sell homestead property, when necessary for the support or education of the minor owner. The statute and the constitution give to the probate court the right to sell the real estate of minors, "or any portion thereof." The court having the power to sell, all presumptions are in favor of the rightful exercise of the jurisdiction. 52 Ark. 341; 11 Ark. 519; 33 Ark. 575; 33 Ark. 727; 34 Ark. 63. Appellee claims under the same title as do the heirs in this case; hence they can not be heard to object to the title on the ground that rights of creditors were disregarded, if such rights had any validity. 41 Ark. 17; 44 Ark. 517.

BUNN, C. J. The only question presented by this record is, "has a probate court, in which a guardianship of minors is pending, the power to order the sale of the homestead left them by the mother (the surviving parent) for the benefit of said minors.

Lucy M. Fulton died seized and possessed of lots 1 and 2 in block 17 in the city of Little Rock, and occupied the same and the improvements thereon as her homestead until the day of her death, her husband having died previously. So far as this record shows, she left no other property and no debts, and no children except her minor sons, Chester and Freddie, named in the caption, who were 19 and 17 years respectively at the institution of this suit. After the mother's death, and before the institution of this suit, the duly appointed and acting guardian of these minors, presumably on proper showing, was ordered and directed by the probate court to sell in the usual manner the said homestead property as that of the estate of said minors, and for their benefit; and the sale was accordingly made, and one W. H. Halliburton became the purchaser, and he subsequently sold to appellee Harris, who took immediate possession under his deed, and was in possession at the institution of this suit, which is a suit in ejectment to eject him from the premises. The foregoing facts appear in the complaint, to which the defendants interposed a general demurrer, raising the question stated at the outset, which demurrer was sustained, and the plaintiff appealed to this court.

This is a new question in this court, so far as we have been able to ascertain, and withal a question which, from the very nature of things, has not been very often presented in any of the courts, and for that reason precedents are not numerous. All the cases, without exception, we believe, which have been called to our attention by the appellant's counsel, are cases of sales or attempted sales under the orders of probate court, at the instance of administrators, to pay debts of the deceased owners of the homestead property; and none of them are cases where the object of the sales was to appropriate the proceeds to the support and education of the minor or minors, or for his or their benefit in any way. That the homestead, during the holding of the widow or the minority of any of the children, cannot be sold to pay the debts of the father's estate goes without further controversy in this state; and the same is to be said of the sale of the homestead left by the mother, as in this case, for her acts during the minority of her children or any of them. But the question is, can the probate court, in any case, lawfully order the sale of such homestead for the benefit of the minor children, who enjoy it as a descended or transmitted homestead from the deceased homesteader?

In *Morton* v. *McCanless*, 68 Miss. 810, the supreme court of Mississippi said: "The whole object of the exemption law of 1865 was to preserve the property from creditors, and not to affect the power of the courts to deal with the property as that of the children and heirs of the exemptionist." Such is the view we take of it. The Mississippi law on the subject, while different from ours in some particulars, yet is so far like ours as to render the same principles applicable in all essential particulars. There are several other cases from the same court, which either directly or incidentally sustain the same doctrine. The supreme court of Georgia expresses some doubt as to the power in the probate (chancery) court to sell; but, if it exists, it exists only as cases of sale of other property of the minor. *Sloan* v. *Nonce*, 45 Ga. 310. See also, as to sales of interests of remainderman, *Jenkins* v. *Faby*, 73 N. Y. 355; *Cooper* v. *Hepburn*, 15 Grattan, 551; *Bell* v. *Clark*, 2 Metcalf, 573; *Thaw* v. *Ritchie*, 136 U. S. 519.

In discussing this identical question, with the foregoing

decisions, as well as others on the subject in mind, Woerner, in his work on "The American Law of Guardianship," (§ 75) after a general reference to the subject of minor's rights in the homestead, and the sale thereof, has this to say: "Under this aspect of the question, and remembering that a homestead right descending from a deceased parent may be the only property owned by a minor, it would appear that a court having jurisdiction over the estate of such minor should be possessed of the power to order the sale of such homestead rights, if it be necessary for his education, maintenance or well being." Following the argument of the author, suppose, as in the case at bar, there were no debts, no other property, and that there was but one child, and he or she, as the case may be, the only child and heir; and, upon that, suppose that the rents and profits of the homestead place were nothing, or not enough to support and educate the child, and that there was no one willing or bound to occupy the premises with the minor, and thus assist in his support and education. In other words, suppose the homestead right was unavailable or utterly inadequate for the purpose. Can it be the law that the probate court, or the court of general, original and exclusive jurisdiction of minors and their estate, cannot sell the property and thereby give it the only real value it has so far as the minor is concerned? We cannot think such is the law. The constitution does not, in terms, seek to do more than protect from the grasp of creditors. There is neither expressly nor by implication a restriction upon the powers of the probate court in respect to this class of the property of minors. The case we have supposed presents the question fairly, and in such a case we cannot see how but one answer can be given. If one case could exist wherein the probate court would possess the power, that is all that is necessary to solve the question. To carry the discussion further than that would simply be to discuss questions pertaining to the proper or improper exercise of the court's discretion in the instances as they may arise, accordingly as the facts may determine.

In the present case there is no controversy as to an abuse of the discretion of the court, and we therefore affirm the judgment of the court below.

BATTLE, J., (dissenting.) The order of the probate court in question, which directed the sale of the homestead of minors, is a nullity.

What is a homestead? In *Williams* v. *Dorris*, 31 Ark. 466, Chief Justice English, in defining it, said: "It is the place of a home or house; that part of a man's landed property which is about and contiguous to his dwelling house. A homestead necessarily includes the idea of a house for a residence, or mansion house. The dwelling may be a splendid mansion, a cabin, or tent. If there be either, it is under the protection of the law, but there must be a home residence before it, and the land on which it is situated, can be claimed as a homestead." *Tillar* v. *Bass*, 57 Ark. 179.

The homestead law creates no new estate, but protects the occupant in the use and occupancy of the land set apart as a homestead during the time of such occupancy. *Chambers* v. *Sallie*, 29 Ark. 412; *Booth* v. *Goodwin*, *id.* 637. Hence "an estate held in common with others is sufficient to support a homestead exemption, without exclusive possession by the tenant who claims the privilege." *Robson* v. *Hough*, 56 Ark. 621; *Thompson* v. *King*, 54 Ark. 9; *Sentell* v. *Armor*, 35 Ark. 49; *Sims* v. *Thompson*, 39 *id.* 301; *Ward* v. *Mayfield*, 41 *id.* 94; *Stull* v. *Graham*, 60 *id.* 461. A leasehold estate is sufficient for that purpose (*Robson* v. *Hough*, 56 Ark. 621); or an equitable title (*Rockafellow* v. *Peay*, 40 Ark. 69). In the case last cited the court said: "Indeed, it is probable that the homestead exemption withdraws from the demands of creditors whatever interest the claimant has in the property dedicated to that use." All these cases prove that the homestead interest is a mere right to use and occupy land as a home or residence.

Upon the fact that the right to a homestead is a personal right to occupy the place of residence as a home, this court held, in *Garibaldi* v. *Jones*, 48 Ark. 230, that the sale of the homestead by the widow was an abandonment of it. In that case the court said: "One of the objects of the constitution is to secure to the widow and orphans the family roof-tree as a fixed home during the widowhood or life of the widow and minority of the children. It would be clearly against the policy and spirit of the constitution, in thus providing a home for her,

to permit her to alienate it, and to allow others to enjoy the benefits of the homestead of a deceased husband and father, which were only intended for the widow and orphan. If she could do so, the exemption which passes, under the constitution, to the widow and minor children upon the death of the husband and father would not be a reservation of a homestead, but a reservation of lands of a certain quantity or value, irrespective of its uses."

In nearly every case, if not all, an abandonment of a homestead with no intent to return to it as a residence produces a forfeiture. Ordinarily, a lease for life is conclusive evidence of an abandonment and forfeiture. *Gates* v. *Steel*, 48 Ark. 539.

In *Booth* v. *Goodwin*, 29 Ark. 633, a question arose as to how minors could occupy a homestead so as to maintain their right to it. The court said: "The intention of the legislature evidently was to extend to the child or children the same protection of the property from sale by the creditor which had been extended to their parents; and as it is our duty, as far as possible, to carry this intent into effect, we must necessarily give to the term 'occupied' such a liberal construction as will uphold, not defeat, the humane intent of the legislature, and must hold that an infant is incapable, either by act or declaration, of abandoning or waiving his homestead right. Not to do so would be to defeat the provisions of the statute as to them. Actual occupancy of the infant upon the homestead place is not necessary; is not required of an infant. It is the duty of his guardian to take possession of the homestead place, and to rent or lease it for the benefit of his ward, as a means for his support and education, and this must have been the possession and occupancy contemplated by the legislature, because it is the only one consistent with the condition of the minor child or children."

The minor children do not create the homestead. It descends to them. During minority they are incapable of waving or abandoning it by act or declaration. As it is a mere occupancy, how can they utilize and enjoy it? The question is answered by *Booth* v. *Goodwin, supra,*—by their guardian taking possession and renting or leasing it for their benefit, as a means for their support and education. In this way it is held and oc-

cupied by them. The occupancy of their guardian or tenant is their occupancy. In case of a sale it would not be so held, but would be abandoned and forfeited.

The constitution intends and directs that the homestead of the father shall be preserved for the benefit of the minor children, in a particular manner, during their minority, and that is by occupancy or renting. It does not authorize any other disposition to be made of it. It provides that "if the owner leaves children, one or more, said child or children shall share with said widow, and be entitled to half the rents and profits, till each of them arrives at twenty-one years of age, each child's rights to cease at twenty-one years of age, and the shares to go to the younger children, and then all go to the widow, and provided that said widow or children may reside on the homestead or not; and in case of the death of the widow all of said homestead shall be vested in the minor children of the testator or intestate." Const. 1874, art. 9, § 6. Under this section they are entitled to reside upon it, and to one-half of the rents and profits if there be a widow, that is to say, to rent it till each of them arrives at twenty-one years of age.

In *Kessinger* v. *Wilson*, 53 Ark. 402, the court said: "The land was set apart by the law to appellants (minors), when their father died, as a home and means of maintenance during their minority. Until the younger of them reached the age of twenty-one years, it could not have been lawfully sold to pay the debts of their father's estate, or partitioned between them. It was not subject to sale, but might have been rented to raise means for their support. Until the younger reached his majority, it remained set apart as 'a place, a sanctuary, to which he or she might return to find the shelter, comfort and security of a home' during his or her minority."

In *Sansom* v. *Harrell*, 51 Ark. 429, the order in question was made by the probate court for the purpose of vesting a homestead in a widow, under a statute which provides: "When any one shall die, leaving a widow or children, and it shall be made to appear to the probate court that the estate of the deceased does not exceed three hundred dollars, the court shall make an order that the estate vest absolutely in the widow or children, as the case may be." Mansf. Dig., § 9. The husband of the

widow left minor children surviving him at the time of his death. This court held the order void, and said: "The constitution sets it apart as a home and sanctuary for the widow and chil- dren, and, for the purpose of preventing any other person in- vading it under a claim of right, or interfering with them in the undisturbed enjoyment of the shelter, comfort and security of it as a home, *guards and protects it against sales and transfers.* The same reason which makes it unlawful to sell the land con- stituting it for the payment of the debts of the deceased owner, subject to the homestead rights of the children, during their minority, makes it unlawful to vest it in the widow, subject to the same rights of the children, during their minority. One en- dangers the quiet, security and comfort of a home provided in the homestead as much as the other, and both equally violate the spirit and manifest intent of the constitution."

The homestead right of minor children, and the estate in the lands, which constitute the homestead, inherited by them in addition thereto, it was held in *Kessinger* v. *Wilson, supra,* are like two separate and distinct estates vested in different persons and following in immediate succession. Their right to the enjoyment and possession of the same cannot exist at one and the same time; and neither merges in the other. The pro- bate court cannot authorize the sale of the homestead right. For that is a personal right and a sale of it is an abandon- ment which forfeits it. Neither can it order the sale of the estate inherited in addition to it, subject to the same, for the same reason it cannot be sold for the payment of the debts of the deceased owner; and that is, "'one endangers the quiet, security and comfort of a home provided in the homestead as much as the other, and both equally violate the spirit and manifest intent of the constitution."

The object of the constitution as to homesteads is not the protection of the impecunious, and no others. It protects the family homes of all classes. It conserves only the homesteads owned and possessed by a resident of this state "who is mar- ried or the head of a family." Upon the death of the owner, it gives it to the widow for her life, and the minor children dur- ing their minority. From this it appears that the policy of the constitution "is to foster families as the factors of society, and

thus protect the general welfare." "To save them from disintegration," as said in Waples on Homesteads and Exemptions, "and secure their permanency," the constitution "seeks to protect their homes from forced sales so far as it can be done without injustice to others." It "protects homes as the pillars of the state edifice, and thereby fosters the sentiments of patriotism and independence, and the spirit of free citizenship." "There is," said Tarbell, J., "unquestionably, no greater incentive to virtue, industry, and love of country than a permanent home, around which gather the affections of a family, and to which the members fondly turn, however widely they may become dispersed." In fostering these sentiments and affections for the purpose of accomplishing its object, the policy of the constitution in preserving the homestead of the father for his minor children during their minority is further advanced by giving to the children an opportunity, when all of them have arrived of age and becomes *sui juris*, to acquire the homestead lands, in the event it becomes necessary to sell the same, and thereby hold them in the family. A sale of such lands during the minority of the children tends to defeat the magnificent policy of the constitution, and should be treated by all courts as void.

It follows that the probate court cannot sell the fee in the land without defeating the spirit and intent of the constitution. It seems to me that no argument or authority is necessary to prove that the constitution, from which it derives its jurisdiction, did not vest the probate court with the authority to defeat its policy or violate any of its provisions.