María López Rudón et al., Plaintiffs and Appellants, *v.* Antonia López, Defendant and Appellee.

No. 6571. Argued February 14, 1935.—Decided April 3, 1935.

*González Fagundo & González, Jr.,* for appellants. *Luis Muñoz Morales* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

The plaintiffs, undivided part owners of a two-story masonry house described in the complaint, instituted an action of unlawful detainer at sufferance to evict Antonia López from the said property. It was alleged in the complaint that for some time the defendant had been unlawfully detaining the material possession of the said real property against the express will of the plaintiffs and without paying any rent or compensation whatever, and that she had refused and continued to refuse to vacate the said real property in spite of the formal demands made by the plaintiffs. The defendant denied that she was unlawfully detaining the material possession of the property, and alleged that she was occupying a part thereof as widow of Miguel Morales Santiago and owner of a homestead right in the second story of said house, and that as her homestead right had not been recognized, she had been obliged to bring the corresponding action against José Torres, a plaintiff herein.

María López Rudón and Miguel Morales Santiago· were the undivided part owners of the said property. Miguel

Morales while married to his second wife, Antonia López, executed a promissory note payable to bearer and, to secure the same, he mortgaged his undivided interest in said property. In June 1932, Julián Dávila, the holder of the mortgage note, foreclosed the mortgage and was awarded the condominium of Morales. At the time of the foreclosure, Morales had died, and the foreclosure proceeding had been continued against his heirs. Since the death of Miguel Morales, the defendant widow has continued to occupy said premises, in which, as she alleged, she had her homestead constituted. Julián Dávila refused to recognize her homestead right opportunely set up by the defendant and sold his undivided interest to the plaintiff José Torres Torres; the widow instituted an action to claim her right in the Municipal Court of Caguas, where the property was situated. When the trial of the case at bar was held, said action was pending in the municipal court.

On April 29, 1933, the District Court of Humacao rendered judgment for the defendant.

██ It is urged, in the first place, that the lower court erred in holding that there is a principle of evidence according to which the defendant's possession was not at will, and that the question she raised should be heard in an ordinary action and not within this unlawful-detainer proceeding.

The plaintiffs, as a basis for the action of unlawful detainer brought by them, relied exclusively on the alleged unlawful detention of the property. The defendant defended herself by setting up that she held the material possession of the property by virtue of a right and was not detaining the same unlawfully. It is argued that the defendant lacked either title or right to avail herself of the exemption authorized by section 541 and 542 of the Civil Code (1930 ed.). The latter section provides that the exemption shall continue after the death of the head of the family, for the benefit of the surviving spouse as long as he or she continues to occupy said homestead, and after the death of both, for the benefit

of their children until the youngest reaches the age of twenty-one years. According to that section, which is substantially the same as sections 2 and 5 of the Homestead Law of the State of Illinois, enacted in 1872, the right of the widow is simply one of occupation during her lifetime. *Merritt* v. *Merritt,* 97 Ill. 243. Under the decisions of the Supreme Court of that state, where one of the spouses dies, having his homestead constituted, the right of the surviving spouse to continue to occupy his homested arises immediately. On the death of one of the spouses, the widow or widower becomes *eo instanti* vested by law with the homestead right. *Kyle* v. *Wills,* 166 Ill. 501; *Brokaw* v. *Ogle,* 170 Ill. 115; *Browning* v. *Harris,* 99 Ill. 456.

Miguel Morales died while he was the owner of an undivided interest in the property which is alleged to constitute the homestead. The mortgage, Julián Dávila, foreclosed the mortgage. The title of the deceased husband which served as a basis for the continuation of the homestead exemption in favor of his wife passed to the foreclosing creditor, from whom the plaintiff, José Torres Torres, derives his title. In regard to this plaintiff it cannot be said that the widow is unlawfully detaining the property, if, as alleged in the answer, she occupies the premises protected by her alleged homestead right.

 As to the plaintiff María López Rudón, co-owner of the property, other questions meriting careful consideration arise. The decisions of the courts are not in agreement as to whether or not a homestead right can be established on an undivided interest in land. There are many courts that sustain the affirmative; among them the Supreme Court of Illinois. In the case of *Brokaw* v. *Ogle, supra,* the said court expressed itself as follows:

"There is conflict in the authorities upon the question, whether there can be a homestead in an undivided interest in land, or, in other words, whether an estate in co-tenancy will support a right of homestead in one of the co-tenants, or whether homestead can only

exist in an estate in severalty. (Citations.) We are inclined to the opinion, that an undivided interest, accompanied by exclusive possession, will support the homestead right. (Citations.) The objection, usually urged against allowing a homestead estate to attach to an undivided interest, is, that, in setting off the homestead, the rights of the co-tenants may be interfered with, and the particular part, set off as a homestead, might, on partition, fall to one of the other co-tenants. But this is a matter of which the other co-tenants alone can complain, and, if their rights are respected, persons who are not co-tenants, cannot object. The object is to protect the portion set off from judgment levies and sales, and not to give an assured title thereto. The co-tenant of the claimant of a homestead cannot question the latter's 'right to acquire a homestead interest in the property, so long as such co-tenant is allowed to enjoy all his rights and privileges in and to said property as a co-tenant.' (Citations.)''

In the above-cited case, Chief Justice Phillips delivered a dissenting opinion in which he maintained that a homestead right cannot be constituted on an undivided common property. From the dissenting opinion delivered in that case we transcribe the following:

''The tenant in common owns nothing in severalty, and no part could be set off to him which did not belong equally to his co-tenants. If the legislature intended to include tenants in common as being entitled to a homestead in lands so held, they would have provided a method of setting off the same. By the first section of the act the 'homestead, and all right and title therein, shall be exempt from attachment, judgment, levy or execution sale for the payment of his debts, or other purposes, and from the laws of conveyance, descent and devise, except as hereinafter provided.' While thus fixing certain qualities and rights attaching to homesteads, the statute is silent as to the homestead right attaching to lands held in common by two or more tenants. Being silent in this respect, those States which hold that an estate in common will support a right of homestead in one of the co-tenants must necessarily add to the statute and take from it. It cannot be free from the laws of conveyance, for if it cannot be partitioned the co-tenant may have it sold. That would be a violation of the spirit and words of the act, and would take away one of the rights and qualities of a homestead. If it should be sought to set off the co-tenant's interest in the manner prescribed by the statute, the homestead so set off might be at once defeated by

the co-tenant having partition made, or sold if it could not be divided. It renders necessary the addition of words to the statute which gives a homestead in the farm or lot owned or possessed and occupied as a residence. If a farm or lot is owned by the householder, no one else has an interest therein. If it is not, then the homestead cannot attach. The legislature has made no provision for a case of this character, and it is not our province to do so. If hardships arise, they may be remedied by legislation which shall meet all the exigencies of such cases. The best interpretation which can be given this statute is to limit it to cases of sole ownership or possession."

The view held by the majority of the court in the case above cited was ratified later in *Hertz* v. *Buchmann*, 177 Ill. 553, with the unanimous approval of the court. In establishing this doctrine, the court recognized that no co-owner can make use of the exemption in prejudice of the rights of any other co-owner or can hinder him in proceedings for the partition of the property. This view of the courts that hold the affirmative seems to us to be fair and proper. In the above mentioned case of *Hertz* v. *Buchmann, supra,* Justice Magruder, speaking for the court, said:

"It has been held, that there can be a homestead in an undivided interest in land, or in other words, that an estate in co-tenancy will support a right of homestead in one of the co-tenants. But this doctrine is never enforced to the prejudice of the just rights of the co-tenants. The exclusive possession of one co-tenant, claiming homestead, is rightful as against the claims of the creditors, but cannot be set up as against the demand of the other co-tenant to be let into joint possession. A co-tenant claiming a homestead right, not having an exclusive right as against the other co-tenant, can be compelled by the latter to make partition. If the property is capable of fair partition, so as to preserve the homestead and protect the co-tenant, the rights of both parties can be easily adjudged. But if the premises are not capable of partition, a court of equity has the power to order a sale for the purpose of a division of the proceeds of such sale."

As to the possession of the property, it has been held that it is not necessary for it to be exclusive in order that the co-owner may constitute his homestead. *Robson* v.

*Hough,* 56 Ark. 621, 20 S.W. 523; *Thompson* v. *King,* 54 Kan. 9, 14 S.W. 925; 29 C.J., par. 165, p. 849. Really, we do not. know of any weighty reason that makes exclusive possession necessary.

The plaintiff María López Rudón, co-owner of the property on which a homestead is claimed, would not have been able to institute an action of unlawful detainer against her former co-owner, Miguel Morales, who, as one of the co-owners of the property, had a right to keep possession. His widow, who is entitled to the usufructuary share determined by law, continued to live on that property. It has not been shown that María López Rudón is prejudiced by the stay of Antonia López on the said property. The homestead right can be recoginzed in favor of the widow without injuring the rights of María López Rudón, who retains her condominium. It does not seem that the defendant has committed any act of unlawful detention. She remains in her home under the protection of an alleged homestead right that she can enforce against José Torres Torres. Therefore, an action of unlawful detainer to compel her to vacate the property does not lie.

It is argued that when the husband of the defendant, Miguel Morales, constituted the mortgage, he declared that said real property was not at all affected by any homestead right in favor of the debtor or of any other person. This statement, made exclusively by Miguel Morales, cannot prejudice the homestead right once constituted on the property. The defendant did not intervene in the mortgage contract, as it involved her husband's separate estate, and he, without the consent of his wife, could not dispose of the homestead or make any admission prejudicial of this right.

The appellants argue that in Puerto Rico the law defines only rural homestead, not urban, and that the court *a quo* erred in considering that urban homestead existed in Puerto Rico. Homestead, according to our law, can be con-

stituted on a farm, plantation, or lot of land. The general meaning of the word *lot* includes any piece of ground in a rural district and an urban district alike. In *Monagas v. Hedilla*, 40 P.R.R. 818, in deciding a question identical with that now raised, we said that the law established no distinction whatever between urban and rural properties. The alleged error is dismissed.

The judgment appealed from must be affirmed.