FLASK, PRESTON & CO. v. TINDALL ET AL.

| 39 | 571 |
| 63 | 618 |
| 39 | 571 |
| 65 | 377 |

1. FRAUDULENT CONVEYANCE: *Attachment for: Fixing price of goods.*
A sale of goods to be fraudulent as to creditors must be made with the fraudulent intent to cheat, hinder or delay them, and there is no fraud in selling and delivering a stock of goods at cost, leaving the aggregate price to be ascertained by an inventory. The delivery completes the sale.

2. SAME: *Releasing mortgage on homestead and taking goods for the debt.*
It is no fraud upon a debtor's creditors for a mortgagee of his homestead to purchase his stock of goods in satisfaction of the debt, and release the homestead. The creditors have no claim upon the homestead, no right to be subrogated to the mortgagee's lien on it, or to require the mortgagee to exhaust its proceeds for his debt before coming upon the general assets of the debtor accessible to all creditors.

3. HOMESTEAD: *Mortgage of, to one, no abandonment to other creditors.*
One may mortgage his homestead, but he does not thereby abandon it to other creditors, to be taken for their debts, either directly or by subrogation.

APPEAL from *Jefferson* Circuit Court.

Hon. X. J. PINDALL, Circuit Judge.

*Martin & Taylor*, for appellants:

1. The conveyance and delivery by a debtor to a creditor of more goods than were necessary to pay his debts was such as would lock up his goods indefinitely, and thereby hinder and delay other creditors, and so fraudulent as to warrant an attachment. *Bramstadt v. Mc Whirter, 9 Neb., 6; McChesney v. Allen, 7 ib., 27; Bump on Fraud. Conv., 392, 404; Jones v. Syer, 52 Md., 211.*

2. If the attempted conveyance was an assignment, then it was void for non-compliance with the statute. *Gantt's Digest, secs. 385-6-7; Raleigh v. Griffith, 37 Ark., 151; Smith v. Woodruff, 1 Hilton, N. Y. C. P., 1857.*

3.   Where an insolvent debtor ships his property, or a material part thereof, out of the State, without leaving enough therein to satisfy his creditors, it is ground of attachment, and it is immaterial for what purpose he so ships it.  *Mack v. McDaniel, Ct. Ct. U. S. E. Dist. Ark., 11 Reporter, 3.*

4.   The release of the mortgage on the homesteads, etc., was a fraud on other creditors.  *Riddell v. Shirley, 5 Cal., 488.*

*Cohn & Cohn,* for appellants:

The transfer is *in effect* a transfer of goods by insolvents, for the sole purpose of *paying* creditors (not simply securing), with a preference to one, and a general distribution of the balance—in fact an assignment.

Irrespective of intent, a debtor can not send property out of the State unless he leave enough to satisfy his creditors.  *Gantt's Digest, sec. 388, sixth clause, and compare with seventh clause; Mack v. McDaniel, 2 McCrary, 198; Holliday Bros. v. Cohen, 34 Ark., 707; Randolph v. McCain, ib., 696.*

As an assignment the transfer was void.  (*Raleigh v. Griffith, 37 Ark., 151; Bartlett, Reid & Co. v. Teah, 1 McCreary, 176.*)  See, also, *3 Barb. Ch., 644; 6 Grattan, 444, 450; Pierson v. Manning, 2 Mich. (Gibbs), 445.*

An assignee for creditors is not a purchaser for value. *1 McCreary, 256; 6 Minn., 307; 2 Mich., 450; 12 ib., 58; 35 Vt., 89; 8 Kan., 480; 18 Iowa, 493; 19 ib., 479; 3 Whart., 347; 11 How., U. S., 398; 43 Mich., 454; 2 Pom. Eq. Jur., sec. 749.*

EAKIN, J.   In a suit at law, by appellants, upon certain acceptances of appellees, a stock of goods was taken by attachment.   They were claimed by Catchings & Co., who

Flask, Preston & Co. v. Tindall et al.

gave bond, retained them, and interpleaded, in accordance with the statute. The defendants traversed the grounds of attachment, making no defense to the debt, for which judgment was rendered. Upon trial of the traverse by the court the attachment was dissolved. The plaintiffs complain of this as error, and bring up the evidence by bill of exceptions.

The alleged grounds of the attachment were that defendants "have removed their property, or a material part thereof, out of this State, not leaving enough therein to satisfy the plaintiffs' claim, or the claims of said defendants' creditors; and have sold, conveyed, or otherwise disposed of, their property; or suffered or permitted it to be sold with fraudulent intent to cheat, hinder or delay their creditors." Both grounds were specially traversed.

As nothing had been taken under the attachment save the goods claimed by the interpleaders, and released to them on their bond, it is a mere abstract question, so far as concerns appellants, whether the first grounds of attachment were valid or not. Although defendants might have rendered themselves liable to attachment of other property, by removing a portion of their assets out of the State, it would not authorize a levy of it upon the goods of Catchings & Co., if their title to it had vested before the attachment had come to the hands of the Sheriff. We will, therefore, consider the validity of the claim of Catchings & Co. as the only question important to the rights of appellants. This is raised by the traverse of the second ground of attachment.

It may be premised that, throughout, we see nothing in the conduct of defendants indicating fraudulent intent. Their firm was struggling amongst breakers of debt, and fast driving to the surf; but they seem to have been doing the best they could to avert the calamity, with a fair regard to the rights of creditors.

The writ was issued on the eleventh of April, 1881. On the third of the preceding February, George and Isaac Tindall, with their wives, had executed to the firm of Catchings & Co. a mortgage of divers tracts and portions of land, to secure a debt then not yet due, for about $2,600, which, the mortgage recites, was owing by George T. Tindall, on account of acceptances. It was, however, a firm debt, really amounting to about $2,700. The property included the home of both grantors.

The firm about that time owed about $7,000 or $8,000, and had assets nominally to near the same extent, perhaps not quite. They consisted mostly in merchandise, and the rest in book accounts.

1. FRAUDU-
LENT CON-
VEYANCE:
Attach-
ment for.

Finding themselves unable to pay their debts, and Catchings & Co. having agreed to release the two homesteads from the mortgage, the firm, on the seventeenth day of March, 1881, by instrument in writing, "sold and delivered" to Catchings & Co. all their stock of goods, at invoice cost, with freight added, and their fixtures at 20 per cent. less than cost and freight. The amount was not ascertained at the time, but it was provided that it should

Fixing
price of
goods con-
veyed.

at once be fixed by inventory. The purchase-money was to be a credit of the debt of the vendors, and the balance was to be paid to a trustee for the benefit of the creditors of the firm, " share and share alike," said trustee to be named by the creditors in thirty days, or, in default of that, by Tindall Bros. & Edwards. Immediate possession was given by the instrument. Their book accounts, at the same time, or thereabouts, were placed in the hands of an attorney for collection, in view of appropriating to the payment of creditors, but as they were not attached, the circumstance is only noticeable as indicating the *bona fides* of the firm in the transaction.

The plaintiffs offered, but were not allowed to prove by

Flask, Preston & Co. v. Tindall et al.

the Sheriff, that when the attachment was levied, Catchings & Co. were engaged in making an inventory of the goods. We may say, in passing, that this was not important. To make the second ground of the attachment good, the sale to Catchings & Co. must have been made with a fraudulent intent to cheat, hinder or delay creditors. If clear of such intent the property passed, with delivery, beyond the reach of attachment. To complete the sale it was not necessary that the exact amount of the purchase-price should be fixed at the time. Nothing remained to be done by the vendors. The inventory was only necessary to fix the amount to be paid, and the intention, as shown by the instrument, was to make delivery and pass property at once. See cases cited in *Benjamin on Sales*, *p. 226, et seq.* The principle is recognized in the case of *Gans v. Holland, 37 Ark., 483.*

It is contended that the sale was fraudulent on account of the agreement of Catchings & Bro. to release the homesteads.

2. SAME: Transferring mortgage from homestead to goods.

This did not secure to the debtors any further or greater benefit than was allowed them by the policy of the law. It was not an advantage derived from any fund which, in any case, would have been accessible to other creditors. The latter can not complain of it, unless they had an equity for marshaling ; that is, the right to compel Catchings & Bro. to exhaust the proceeds of the homestead before coming upon the general assets accessible to all; or the right to be subrogated to their lien, if they should receive payment out of the general funds. We think this right did not exist. The general creditors, at the time of the sale, and before attachment, had no lien at all upon anything, nor any equity to require of Catchings & Bro. to retain for their benefit a special security for their special debt, which had been given them in contravention of the

Flask, Preston & Co. v. Tindall et al.

3. HOME-
STEAD:

Mortgage
of, to one,
no surren-
der of it to
other cred-
itors.

policy of the law.   By the present Constitution owners of homesteads may incumber them as their judgment may dictate, but they do not thereby abandon them to their general creditors to be taken, either directly or by way of subrogation.   They have the right to release them by discharging the special incumbrance.   This court, in *Marr v. Lewis*, *31 Ark., 203*, declined to apply the doctrine of subrogation to defeat a homestead right.

It is seriously urged that Catchings & Co. are mere assignees for creditors, and that, having failed to take the steps required of them as such by our statute, they can not hold the property.   We can not so view it.   They were absolute purchasers of the whole stock, and under obligations to account to no one for them, after paying the price, which was due as soon as ascertained.   That a part was to be paid to trustees, did not make *them* such, any further than as in a general moral sense every debtor is a trustee of his creditor.

The declarations of law made by the court upon this second ground are unobjectionable, being simply in accordance with what is above announced.   If it erred upon the first ground it did not affect plaintiff's rights to the special goods under the control of the court.

The order discharging the attachment was substantially correct.

Whether or not a merchant who, in the usual course of business, makes shipments out of the State, not in such manner as to diminish his general assets, renders himself liable to attachment, is a question to be considered more carefully when presented as substantially affecting the merits of a case.

Affirm.