## McComb v. Judsonia State Bank.

Opinion delivered June 21, 1909.

1. FRAUDULENT CONVEYANCE—SALE SUBJECT TO LIENS TO BE DECLARED.—A bill of sale of lumber which is made in good faith is not fraudulent as to creditors of the vendor because it provides that, if any liens are declared against said lumber, said amount shall enter into and become a part of the purchase price of said lumber. (Page 222.)

2. SALE OF CHATTELS—ENFORCEMENT OF SPECIFIC ATTACHMENT.—The statutory remedy authorized by Kirby's Digest, § § 4966, 4967, in favor of a vendor of chattels, to enforce payment of the purchase money, is not a lien, and cannot be enforced where the property has passed into the hands of a purchaser for value, even though such purchaser had notice that the purchase money had not been paid. (Page 223.)

Appeal from White Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*S. Brundidge, Jr.,* and *Cypert & Cypert,* for appellant.

1. The mortgage is void as to rights of third parties because the acknowledgment was taken before a notary who was president of the bank, the mortgagee. 68 Ark. 166; 70 *Id.* 309; 63 N. E. 1049; 96 Va. 138; 36 Fla. 575; 13 Mich. 329; 87 Iowa 363; Jones on Mortg., § 249; 50 N. E. 594.

2. The mortgage was fraudulent as to creditors because the mortgagor was left in possession and continued to sell the property mortgaged for nearly thirty days. 50 Ark. 97.

3. The bill of sale was a subterfuge, not final, but only an unrecorded mortgage of no validity as to third parties and creditors.

4. Failure to pay by the terms of the lease worked a forfeiture, and Austin did not own anything to sell to the bank. Forfeitures are not favored in equity, yet where a forfeiture works equity and protects the rights of parties equity will enforce it. 86 Ark. 489; 80 Pa. St. 142.

5. Where anything remains to be done between vendor and vendee of personal property to ascertain the quantity or price, there is no such delivery as passes title, though the price be partly paid. 5 Ark. 161; 19 *Id.* 566; 25 *Id.* 545. The bill of sale was too indefinite and vague.

*Rachels & Robinson,* for appellee.

1. The acknowledgment by a stockholder or director, who is a notary of a corporation of a mortgage to the corporation, is good. 97 Tenn. 285; 56 Ark. 511; 93 Va. 101; 24 S. E. 899; 9 Mont. 323; 23 Pac. 718.

2. Parol evidence cannot be used to impeach or destroy an acknowledgment to a deed which fails to disclose upon its face that the officer who took the acknowledgment had some interest. 50 Tex. 224.

3. Taking possession by the mortgagee was an appropriation to the mortgage debt with the debtor's consent, and makes the title good against subsequently acquired rights. Jones on Chat. Mortg., § 178; 50 Ill. 444; 105 U. S. 401; 3 S. W. 405; 49 Ark. 279; 52 Id. 385; 26 Kan. 625; 51 Ill. 198.

4. Where personal property is incapable of actual delivery, a bill of sale or other evidence of title is sufficient to pass title and possession. 31 Ark. 163; 31 Ark. 121; 54 Id. 305; 60 Id. 613; 90 Ark. 131; 80 Ark. 572; 76 Id. 506; 68 Id. 307.

5. The recorded mortgage was a lien on all the lumber subsequently sawed, though not in existence when the mortgage was executed, until the account was finally settled, notwithstanding the property remained in possession of the mortgagee and he sold part of the lumber. 72 Ark. 390; 68 Ark. 307.

6. The property was realty, not personalty. 76 Ark. 273. A vendor's lien (so called) on personal property cannot be enforced after it has passed into the hands of third parties. 52 Ark. 450, 458; 76 Id. 273.

7. There was no fraud. 64 Ark. 180.

8. The sale was complete, and the title passed to Austin. 9 Ark. 478; 19 Id. 573; 23 Id. 253; 35 Id. 190.

9. A vendor's lien on chattels is unknown to our law. 45 Ark. 136; 52 Id. 450; 71 Id. 344; 77 Id. 14.

Hart, J.  On the 18th day of August, 1907, A. C. McComb, by an instrument in writing, leased his sawmill and machinery to S. E. Austin, who was at the time doing business under the firm name of the Young Land & Lumber Company, and the same instrument also contained a contract whereby McComb sold to Austin the timber from certain of his lands.

On November 1, 1907, Austin sent to McComb at Oshkosh, Wis., his check for $767.57 on the Judsonia State Bank in pay-

ment for timber cut off said lands. The bank refused to pay the check and returned it.

On the 16th day of November, 1907, McComb brought suit in the White Circuit Court against S. E. Austin and the Young Land & Lumber Company to recover said sum of $767.57, alleged to be due for the purchase price on said timber, and sued out a specific attachment under sections 4996 and 4967 of Kirby's Digest, and caused it to be levied on the said timber, which was then at Austin's mill, and which is now the subject of this litigation.

On January 22, 1908, S. E. Austin, by his attorney, H. P. Cleveland, filed his answer to the suit, in which he admitted the indebtedness to McComb, and asked for a dissolution of the attachment on the ground that he had given a chattel mortgage to the Judsonia State Bank on said property, and that after the execution of said mortgage, on the 14th day of November, 1907, he had given said bank a bill of sale of said property.

On December 7, 1907, the Judsonia State Bank filed its complaint in the White Chancery Court against A. C. McComb *et al.,* in which it asked for a receiver to take charge of said property, and also asked that its mortgage be foreclosed. Afterwards, by order of the court, S. E. Austin was made a party to the suit, and through H. P. Cleveland, his attorney, entered his appearance to the action.

On January 23, 1908, the Judsonia State Bank asked to be made a party to the suit of McComb *v.* Austin, pending in the White Circuit Court, and at the same time asked that the cause be transferred to the chancery court and consolidated with its suit to foreclose its mortgage. The transfer was made, and the causes were consolidated.

On March 14, 1908, McComb filed his answer to the chancery suit brought by the bank, in which he set up collusion between the bank and Austin, and asked to have his attachment sustained, and his debt for purchase money of the logs paid to him before any part of the money arising from the sale of the logs should be paid to the said Judsonia State Bank.

Will Darden was appointed receiver to take charge of and to sell the property in controversy. The property was sold by him for the sum of $2,042.68, and the sale was duly confirmed by the court. The bill of sale by Austin to the bank reads as follows:

"Know all Men by These Presents:

"That the undersigned, S. E. Austin, being indebted to the Judsonia State Bank in the sum of twenty-one hundred forty-five dollars and sixty-eight cents, which is secured by deed of trust on certain lumber, ties and logs now on the mill yard at the mill near Barber Lake, in the county of White, better known as the McComb mill, and for the purpose of avoiding the expense of advertising and selling the same, and further for the purpose of avoiding the excitement that will naturally follow with the laborers, I, this day, for and in consideration of the said sum of ($2,145.68), the sum due the Judsonia State Bank, and for the further sums due for labor which will be by law declared a lien against the lumber, ties and logs, sell, transfer, assign and deliver to the Judsonia State Bank all the lumber, ties and logs now located at the mill yard at the McComb mill near Barber Lake, to it to have and to hold as its own forever, with the distinct understanding that, if any liens are declared against said lumber, ties and logs for labor, said amount shall enter into and become a part of the purchase price of said lumber, ties and logs.

"S. E. Austin."

"The foregoing instrument was signed in my presence on the 14th day of November, 1907.

"H. P. Cleveland."

The chancellor found that the bill of sale was valid, and that the attachment sued out by McComb was subsequent to the date of the bill of sale.

A decree was therefore rendered, in which the attachment of McComb was dissolved, and his cross complaint dismissed for want of equity. McComb has duly prosecuted an appeal to this court.

The first contention made by his counsel is that the mortgage from Austin to the bank is of no validity, as far as the rights of McComb are concerned, for the reason that the ac-

knowledgment to it was taken by C. M. Erganbright, who at the time was president of the bank, its business manager and one of its directors and stockholders. Assuming their contention to be correct, it does not help them any. The decree of the chancellor was based upon the bill of sale from Austin to the bank and not upon the mortgage.

The chancellor found that the bill of sale was valid, and was prior in point of time to the suing out of the attachment by McComb, and we can not say that his findings are against the weight of the evidence. The evidence clearly shows that, on the 16th day of October, 1907, when the mortgage was executed, Austin was indebted to the bank in the sum of $800; and that on the 14th day of November, 1907, the date of the exectuion of the bill of sale, his indebtedness to the bank amounted to $2,145.68.

The testimony on the part of the bank shows that the bill of sale was at once delivered to H. P. Cleveland, who was then the attorney for the bank, and that the bank, through Claud Taylor, immediately took possession of the property embraced in the bill of sale. Taylor, up to the time of the execution and delivery of the bill of sale, had been an employee of Austin, but it is not shown that he had any interest, either in the sawmill or in the property involved in this controversy. The attachment of McComb against the property was not sued out until the 16th day of November, 1907.

It is also contended by counsel for McComb that the bill of sale was of no effect for the reason that at the time of its execution the bank did not know how much it was paying for the property, and that Austin did not know how much he was receiving. In support of their contention, they rely upon that clause of the bill of sale, which reads as follows: "With the distinct understanding that, if any liens are declared against said lumber, ties and logs for labor, said amount shall enter into and become a part of the purchase price of said lumber, ties and logs."

In the case of *Flask* v. *Tindall,* 39 Ark. 571, the court held: "A sale of goods, to be fraudulent as to creditors, must be made with the fraudulent intent to cheat, hinder or delay them, and there is no fraud in selling and delivering a stock of goods at

cost, leaving the aggregate price to be ascertained by an inventory. The delivery completes the sale."

So, in the present case how much was due for labor which had been performed on the property was capable of definite ascertainment. Moreover, the statutes gave the laborers a lien for their services performed in getting out the logs and manufacturing them into lumber, which could not have been defeated by the terms of the bill of sale.

Again, it is urged by counsel for McComb that the rights of Austin under his contract with McComb had been forfeited. In support of this contention, they rely upon the provisions of the contract which provide that Austin shall remit to McComb the money for the timber cut on the first of each month, and that "if the second party (Austin and the Young Land & Lumber Company) fails to do so on the first of each month he and they forfeit all rights hereto, and invalidates this lease and contract." It is not necessary to decide whether this language is sufficient upon which to base a right of forfeiture, for no forfeiture was declared or attempted to be asserted by McComb. As stated in *Braddock* v. *England,* 87 Ark. 393, there can be no *nunc pro tunc* forfeiture.

Instead of declaring the contract at an end when default was made under it, McComb was endeavoring to assert his rights thereunder by suing out a specific attachment against the property under sections 4966 of Kirby's Digest. Before this proceeding to impound the property had been instituted, the property had been sold to the bank for a valuable consideration.

In the case of *Neal* v. *Cone,* 76 Ark. 273, the court held: "The statutory remedy authorized by Kirby's Digest, § § 4966, 4967, in favor of the vendor of chattels, to enforce payment of the purchase money, is not a lien, and can not be enforced where the property has passed into the hands of purchasers for value, even though they may have had notice before their purchase that the purchase money had not been paid."

Finding no prejudicial error in the record, the decree is affirmed.