GATES & BRO. V. STEELE.

48 539
65 254
65 360

1. HOMESTEAD: *Head of family.*
   A married man is the head of a family though his wife has abandoned him. Until divorced she may return at any time.

2. SAME: *Abandonment of, by lease. Intention. Evidence.*
   Ordinarily, a lease of a homestead for life is conclusive evidence of an abandonment of it; but where the lease reserves to the lessor the right to return to the homestead, and it is his intention to return, there is no abandonment. And in a contest for exemption between the lessor and a judgment creditor, parol evidence of other agreements than those expressed in the lease, is admissible.

Gates & Bro. v. Steele.

APPEAL from *Prairie* Circuit Court.

Hon. M. T. SANDERS, Judge.

*C. E. Warner*, for appellant.

1. The appellee was not a married man or the head of a family, within the meaning of the constitution. His wife did not live with him, nor had he any family dependent upon him for support. *Art. 9, sec. 3, Const. 1874; Potter's Dwar. on Stat., p. 175; 1 Kent Com., p. 510; 24 Ark., 158; 27 ib., 648; 42 ib., 539; Thomp. on Homest. and Ex., secs. 273-4.*

2. Appellee did not reside on the land at the time of the levy, nor occupy same as a homestead, nor had he resided upon or occupied same for a long time prior to the levy of the execution. *42 Ark., 175; 22 ib., 404; Thomp. on Homest. and Ex., secs. 265-6-7, 270-1-2.*

*J. E. Gatewood*, for appellee.

1. Appellee is a *married* man and head of a family, within the meaning of the constitution. *Sec. 3, art. 9.*

The abandonment of the wife does not affect the homestead rights of the husband. *Thomp. on Homest. and Ex., sec. 278.*

Whilst a marriage *de jure* exists, the husband is "the head of a family," though composed only of his wife who has left him and is living apart from him. *8 Cent. Law Jour., p. 46.* See, also, *ib., p. 157 and 461; 14 ib., p. 417.* When a homestead is once acquired, it is not defeated by the death or absence of the wife or children. *43 Ark., 429; Thomp. on Homest. and Ex., sec. 72; 27 Am. Rep., 401.*

2. It is not necessary that the owner of a homestead should remain upon it continuously after he has impressed

Gates & Bro. v. Steele.

it with the character of a homestead. After that, he can leave it at will, lease it, rent it, and be gone from it indefinitely. There must be a design to abandon it permanently, with no intention of returning. *22 Ark., 401; 37 ib., 283; 41 ib., 310; Thomps. Homest. and Ex., secs. 266-7, 287, subd. 6; 14 Cent. Law Jour., 416-7.* The abandonment must be voluntary. *Thomp. Homest. and Ex., sec. 283.*

There was no voluntary abandonment in this case, but always an intention to return.

There is evidence to support the findings of the court, and this court will not disturb it. *36 Ark., 476; ib., 161; 38 ib., 139; 26 ib., 371.*

SMITH, J. Gates & Brother recovered a judgment against Steele, and sued out an execution, which was levied on eighty acres of land. The defendant filed his schedule, claiming the land as his homestead, and the clerk of the circuit court stayed the sale. The plaintiffs now moved the court to quash the *supersedeas* upon two grounds: First—That Steele was not a married man, nor the head of a family, within the meaning of the exemption clause of the constitution; and second—That the land was not occupied as a home at the date of the levy. But the circuit court refused to discharge the *supersedeas.*

Steele had established his home upon this tract many years before, and lived upon it at the time of the contraction of this debt, and of the recovery of judgment, with his wife and a son nine or ten years old. These members of his family were still living at the date of the levy and subsequent trial. But his wife had, in the year 1879, left him and had not since lived with him, although the parties had never been divorced. Steele having fallen sick, and being about seventy years of age, his son-in-law, Wray,

who lived on an adjoining farm, had removed him to his own house, that he might be nursed and cared for. And in December, 1879, Steele executed to Wray a lease for the premises. This instrument recites the lessor's age and infirmities, and purports to let the farm for the remainder of his life, in consideration that Wray will support and provide for him; and in case of failure to do so, the lease is to be at an end. But Wray's interest is limited to the taking of the annual rents and Steele expressly reserves his right of homestead in the demised premises.

Steele had never regained his health and had continued to live with Wray for four or five years and, indeed, until after the writ was levied, when he moved back to his own place. The lease had never been canceled, and Wray still controlled and managed the land. But the oral testimony adduced on both sides, tended to show an understanding and agreément that Steele might return and resume possession whenever he felt himself strong enough. The inducement for the lease was his fear lest he might become a burden to his son-in-law. He says he turned the place over to Wray to keep until he was able to go back. A bed and carpenter's tools were carried to Wray's, but the rest of his furniture and effects were left on the farm.

1. HOME-STEAD: Head of family. On the first point we have no difficulty. Steele was a married man and the head of a family. He owed his wife and minor son protection and support. The wife, though living separate, might have returned to her duty at any moment. *Stanley v. Snyder, 43 Ark., 429,* goes much further; holding that a homestead right once acquired, is not forfeited by the death of the wife, and the arrival at age and removal of the children.

Aside from the authority of that case, and leaving out of view Steele's obligations to his infant son, it is hard to understand how the voluntary desertion of his wife could

Gates & Bro. v. Steele.

alter the legal status of Steele. The adjudged cases lend no support to such a view. But, on the contrary, it has been frequently decided that, whilst a marriage *de jure* exists, the husband is the head of a family, within the purview of the homestead law, although his family may consist only of a wife, who has left him. *Brown v. Brown's Administrator, 68 Mo., 388; Whitehead v. Tapp, 69 ib., 415; Pardo v. Bittorf, 48 Mich., 275.*

The other point presents a closer question. Under ordinary circumstances the execution of a lease for life would furnish conclusive evidence of an abandonment of the homestead; for the owner thereby puts it out of his power to use the premises for a family residence. But Steele's absence was involuntary. And his lease stipulated for the retention of his homestead. Even in a controversy between lessor and lessee, some effect should be given to this clause, if it is susceptible of any. The most obvious meaning is, that Steele reserves the right to make his home upon the land. And such is the construction the parties to the lease have themselves practically put upon this provision.

2. SAME: Abandonment by lease. Intention.

But this is not a suit between the parties to the instrument. Hence the rule which prohibits the contradiction of the written contract by parol evidence, does not apply. It might be, and was shown, that other agreements were made concerning the property, besides those expressed in the writing. *1 Gr. Ev., sec. 279; Hensley v. Brodie, 16 Ark., 511; Talbot v. Wilkins, 31 ib., 411.*

EVIDENCE.

The abandonment of a homestead, after it has once been in good faith established, is always essentially a question of intention. *Thompson on Homestead and Exemptions, sec. 263, et seq.; Tomlinson v. Swiney, 22 Ark., 400; Euper v. Alkire; 37 ib., 283; Brown v. Watson, 41 ib., 309.*

Deference is accordingly due to the decision of the trial

court, if there is any sufficient evidence that the claimant, at the time of leaving, contemplated a return. Here the plaintiffs themselves introduced a witness, from whose statements the court below might infer that the abandonment was not final.

Affirmed.