<hr />

GRAY v. PATTERSON.

Opinion delivered June 11, 1898.

| 65 | 373 |
| 74 | 595 |
| 75 | 206 |
| 75 | 593 |

1. HOMESTEAD—WHEN NOT LOST.—A homestead estate, when once acquired, and still occupied by the owner, is not defeated or lost by the death of his wife, and removal of his children from the premises. *Stanley* v. *Snyder*, 43 Ark. 429, followed. (Page 376.)

2. SAME—ABANDONMENT.—A finding that the owner of a homestead has not abandoned it is supported by evidence that, on account of his advanced age and his inability to procure some one to live with him, he took up his abode with his daughter, but with the constantly expressed desire to return and live at his home. (Page 376.)

3. SAME—FRAUDULENT CONVEYANCE.—A creditor cannot complain that his debtor has made a fraudulent conveyance of his homestead. (Page 377.)

Appeal from Independence Circuit Court in Chancery.

RICHARD H. POWELL, Judge.

*Neill & Neill,* for appellants.

Services rendered to one member of a family by another do not constitute a valuable consideration for a transfer. Bump, Fraud. Conv. (3 Ed.) 232, and cases; Sand. & H. Dig., §§ 3464; 8 Am. & Eng. Enc. Law, 767, note. Therefore the conveyance, being a voluntary one, is in fraud of creditors. Appellee cannot set up any consideration other than that mentioned in the deed. 44 Ark. 180; 30 Ark. 417. When one entitled to a homestead ceases to be the head of a family, the homestead fails. 42 Ark. 541; 24 Ark. 157; 43 Ark. 435. Even under the opinion of the majority of the court in *Stanley* v. *Snyder,* 43 Ark. 429, the homestead claimant must continue to reside on the land as his home. 43 Ark. 434.

*Yancey & Fulkerson,* for appellee.

The homestead right continues in the head of the family, even after the family have ceased to exist. 43 Ark. 432; 12 Allen, 34; 48 Ark. 542. Nor is the homestead claimant required to actually live *on* the land. 55 Ark. 55; Thomp. on Hom. & Ex. § 272. Abandonment depends upon intent, and it is a question of fact. 55 Ark. 55; 37 Ark. 284; 22 Ark. 405. Creditors have no rights in the debtor's homestead; hence there can be no transfer of it, in fraud of creditors. 43 Ark. 434; 52 Ark. 101; 56 Ark. 156.

BUNN, C. J., The plaintiffs, Gray Bros., by bill in chancery seek to set aside a conveyance made by defendant James A. Meacham to his daughter and co-defendant, Elizabeth A. Patterson. Decree for defendants on the complaint, answer and testimony in the cause, and the plaintiffs appealed to this court.

The complaint was filed at the fall term, 1895, of the Independence circuit court in chancery, setting up substantially the following facts, to-wit: That plaintiffs obtained judgment against defendant Meacham in justice of the peace court, on 17th August, 1895, and in due course, after execution issued and returned *nulla bona,* caused a transcript of said judgment

to be lodged and filed in the circuit court of said county; that after the debt was contracted, but before said judgment for the same was rendered, to-wit, on the 10th March, 1894, said Meacham conveyed to his said daughter, for the consideration named in the deed of $800, the following lands lying and being situate in said county, to-wit: The N. E. ¼ of the N. W. ¼ of section 1, in township 14 north, of range 6 west, the N. W. ¼ of the S. W. ¼ and the E. ½ of the S. W. ¼ of section 36, township 15 north, of range 5 west, containing in all 160 acres, and that the same was all the property he owned at the time, of any material value; that the said Elizabeth A. Patterson, at the time of said conveyance to her, had full knowledge of the existence of said indebtedness of her father, the said James A. Meacham, to the plaintiffs, and that the consideration named in said deed from him to her was a mere pretended consideration, and that said conveyance was made in fraud of Meacham's creditors, the plaintiffs among the number. Prayer to set aside the conveyance, and subject the said lands to plaintiffs' said judgment, which at the institution of this suit amounted to $205.

The answer admits the partnership of plaintiffs, that they obtained judgment against Meacham in justice of the peace court, and that a transcript of same was filed in circuit court, as stated in the complaint, but denies that the consideration of the deed from Meacham to Patterson was a pretended consideration, and, on the contrary, avers the same to have been *bona fide;* that it was the estimated value of the expenses and services to be borne and performed by Patterson in the care and maintenance of her father, the said Meacham, during his natural life, which was the real consideration, and which she obligated herself to defray and perform for that purpose for him. It denies all knowledge of said indebtedness at the time of the making of said conveyance from Meacham to said Elizabeth A. Patterson, his daughter as aforesaid. It sets up that said Meacham, as the husband and father and head of a family, had occupied said lands as his homestead for more than fifty years next preceding the filing of the same; that a large family of children had been reared thereon, had died, married and gone from the paternal roof, and finally the wife and mother died,

and defendant Meacham, in his advanced age, being about eighty-five years old, after remaining alone upon the homestead about one year after the death of his wife, as a matter of necessity (being unable to care for himself, and failing to induce same to live with him) took up his abode with his said daughter; that it was his constantly expressed desire to return and live in his old home, which was near by, but, failing to procure any one to live with him there, he finally made the arrangement with the daughter indicated, conveying to her his said homestead lands as his part of the agreement to that end.

The questions presented by this record are: Did Meacham lose his right of homestead by the death and removal of all his family and dependents? Did he subsequently abandon his said homestead after the death and separation of his family, so as to leave the same subject to the payment of his debts; and, if so, what was the act of the abandonment; and, in either case, what was the effect of his action upon his creditors? In other words, did he ever and in fact abandon his homestead until the sale thereof; and, if not, was the sale void as against creditors?

In *Stanley* v. *Snyder*, 43 Ark. 432, the court said. "The existence of a family being necessary to the acquisition of a homestead, does a continuation of the right depend on a continuation of the family relation? The decided weight of authority is that a homestead estate, when once acquired, and still occupied by the owner, is not defeated or lost by the death of his wife or the arrival of his children at the years of maturity. Thus, the Massachusetts statutes of 1855 limited the homestead exemption to a 'householder having a family,' and continued it to the widow and children after his death, but contained no provision as to its continuance in the husband after the death of the wife and departure of the children. Nevertheless, where the owner of certain premises lived upon them with his wife and son at the time of the passage of the act, it was held that he acquired under the statute a homestead estate therein, which was not affected by the subsequent death of his wife and the coming of age and departure of his son, so long as the father continued to occupy the premises as his home. 'Any other construction' (says the supreme court of Massachusetts), 'would render a husband, who had been deprived of his family by accident or dis-

ease, or by their desertion without any fault of his, liable to be instantly turned out of his homestead.'" And, construing further: "The constitution, which contains our homestead statutes, has not in express terms anticipated and provided for every possible phase of the question. It therefore devolves upon the courts to construe and apply the law to new cases, as they arise. Interpreting the law according to its spirit, and following the current adjudications, we hold, though with some hesitation, that when the association of persons which constitute the family is broken up, whether by separation or the death of some of the members, the right of homestead continues in the former head of the family, provided he still resides at his old home." The expression, "provided that he still resides at his old home," is to be taken in its legal sense, and not in its literal sense; for it does not mean to make the continuation of the homestead right dependent upon actual occupancy, but upon such occupancy as a homesteader may successfully show in answer to a charge of homestead abandonment, according to the principle.laid down in the books. Thus, although not in the actual occupancy of the homestead, yet, if his absence therefrom is only temporary for business or pleasure,—and we may add for necessity or convenience,—it is still an occupancy. *Euper* v. *Alkire*, 37 Ark. 283; *Flask* v. *Tindall*, 39 Ark. 571; *Marr* v. *Lewis*, 31 Ark. 203; *Brown* v. *Watson*, 41 Ark. 309. But, this being a question of fact, and determined in favor of appellee by the court below, upon evidence sufficient to sustain its findings, the same will not be disturbed here.

Taking this view of the matter, Meacham's homestead right continued up to the time of its sale to his daughter, and therefore we are only called upon to consider whether the plaintiffs and appellants can complain of the sale in any event. The case of *Chambers* v. *Sallie*, 29 Ark. 407, arose under the constitution of 1868, upon which a judgment, as in that case, was a lien upon the homestead, and the issuance of an execution thereon was only postponed until the homestead right ceased, when it could be levied, and the homestead sold thereunder. The homesteader could not defeat this judgment lien by sale of the homestead under that constitution. But no judgment is a

lien upon the homestead under the present constitution, and this court has said, time and again, that the sale of the homestead is no concern of the creditor; and whatever may be our personal views of the matter, it is settled law, and it were better that it be not re-opened for discussion. *Bogan* v. *Cleveland*, 52 Ark. 101; *Bennett* v. *Hutson*, 33 Ark. 762; *Turner* v. *Vaughan*, 33 Ark. 454; *Carmack* v. *Lovett*, 44 Ark. 180; *Stanley* v. *Snyder*, 43 Ark. 429; *Pipkin* v. *Williams*, 57 Ark. 242; and *Campbell* v. *Jones*, 52 Ark. 493.

. This, in our opinion, settles this case. Decree is therefore affirmed.

BATTLE, J., (dissenting). James A. Meacham occupied the land in controversy as a homestead until January, 1891, when he left it. His wife having died in 1890, and his children having ceased to reside with him, he never returned. He was then about eighty-five years old and feeble. Needing the constant attention of some one to protect him against injuries from falling, he moved to his daughter's, Elizabeth Patterson's, and resided with her until his death. Old, feeble and rapidly growing feebler, alone, his wife dead, his children gone, and with a few years in expectancy, it is unreasonable to presume that he intended to return to the old homestead. Why should he return when the same causes that drove him from it still existed, and perhaps would never end? What use had he for a homestead? Why should he longer linger there in the evening of life? He had not the strength or means to make it any longer useful or desirable to him as a home. He was too old and poor, having no other property. The sequel proves that he had abandoned it. After he had ceased to occupy it for more than three years, in March, 1894, he conveyed the land that had constituted it to his daughter, Elizabeth A. Patterson, in consideration that she would take care of and support him for the remainder of his life. All these facts prove to me that the land in controversy had ceased to be his homestead long before he conveyed it to his daughter.

Meacham was in debt. The land in controversy was all the property he owned. The conveyance of it to his daughter in consideration that she would take care of and support him for the remainder of his life was in legal effect a conveyance in

trust for himself, and is fraudulent and void as to existing creditors.  *Woodall* v. *Kelly*, 85 Ala. 368; *Annis* v. *Bonar*, 86 Ill. 128; Bump on Fraudulent Conveyances (4 Ed.), § 199, and cases cited.  But it is said that the land constituted his homestead at the time he conveyed it to his daughter.  Admit this to be true, and it is still fraudulent as to existing creditors. No insolvent debtor is entitled to hold any land as free and exempt from sale under execution or other final process, except the land constituting his homestead.  When he abandons the homestead, the land ceases to be exempt.  He cannot continue the exemption .by conveying the land to another to hold in trust for him.  As said in *Annis* v. *Bonar*, 86 Ill. 128, "the law allows no man, beyond the   *   *   *   exemption of the statute, by any form of contract or mode of disposition of property, whatever it may be, to secure the use of the property to himself, to the exclusion of his creditors." .

When an owner ceases to occupy his homestead, and conveys the land constituting it to another, in consideration that the grantee will support and maintain him for his natural life, he thereby sets it apart to other uses than a homestead, and the grantee thereafter holds in trust for him land which by the abandonment ought to be subject to sale for the payment of his debts.  After the conveyance, he stands in no other relation to such land than he does to land that he never held as a homestead, and has conveyed to another for the same purpose.  The fact that the land once constituted his homestead does not change the legal effect of the conveyance.  The grantee in both cases holds the land for the grantor's benefit, and the effect of the conveyance, if allowed.to stand, would enable the grantor to place property, for his own benefit, beyond the reach of his creditors, that he is not entitled to hold exempt from seizure and sale under final process; and would thereby enable him, if insolvent, to defraud his creditors.  Such being their effect, it follows that the conveyances are fraudulent and void as to the creditors of the insolvent grantor.

The question I have considered and discussed in this opinion was not presented or decided in *Bogan* v. *Cleveland*, 52 Ark. 101; *Bennett* v. *Hutson*, 33 *id*. 762; *Turner* v. *Vaughan*, 33 *id*. 454; *Carmack* v. *Moret*, 44 *id*. 180; *Stanley* v. *Snider*, 43 *id*.

429; *Pipkin* v. *Williams,* 57 *id.* 242; and *Campbell* v. *Jones,* 52 *id.* 493,—cited in the opinion of the court. In none of these cases did an insolvent debtor, by a conveyance to another, set apart the land which constituted his homestead for his use and benefit, to be held in trust for him after it had ceased to be his homestead.

The decree of the circuit court ought to be reversed.

WOOD, J., concurs with me in this opinion.