WHITE *v.* TURNER.

4-6472                                    155 S. W. 2d 714

Opinion delivered November 17, 1941.

*Perry C. Goodwin* and *Wm. J. Kirby,* for appellant.

*H. A. Northcutt* and *Oscar E. Ellis,* for appellee.

GRIFFIN SMITH, C. J. W. J. White, 74 years of age, signed and went through formality of acknowledging a deed conveying 160 acres to appellant, who is the widow of one of White's sons who died in 1919. Appellant lives

in Springfield, Missouri. She testified that the deed was mailed to her about July 20, 1939. It came with a letter dated July 16, but postmarked July 19. The grant expressed "one dollar and other valuable considerations." Appellant testified the agreement was that she should pay White $500 and take care of him during the remainder of his life. Three hundred dollars, it was claimed, had been paid on the money consideration.

Johnston and Craig, partners who practiced as physicians and surgeons at Batesville, rendered professional services to White's wife in 1936, including hospitalization. Judgment for this debt, which with interest amounted to $325, was obtained in a justice of the peace court. After fruitless efforts to collect, the judgment was assigned to T. H. Turner, appellee herein. Transcript was filed with the circuit clerk, and thereafter execution issued, with levy upon certain personal property. White executed a mortgage on the property affected by the levy, this having been done the same day the sheriff acted, and after the levy had been made. Perry C. Goodwin, White's attorney, was mortgagee. The document was back-dated. When confronted with accusations and evidence that the date was fictitious, a lame explanation was made and the mortgage destroyed.

The personal property was sold October 9, 1939. November 6 of the same year an execution for the balance of $243.25 was issued and levied upon the lands White had sought to convey to appellant. November 13, 1939, White's deed to appellant was filed for record. The real property was sold December 2. February 26, 1940, the sheriff reported his sale. The circuit court docket shows the following notation: "Certificate of purchase and report of sale filed and confirmed. Exceptions of Lina C. White to confirmation of sale entered, and deed ordered made to T. H. Turner, assignee of the certificate of purchase."

There is substantial evidence that Perry C. Goodwin represented appellant when her exceptions were filed, although he testified to the contrary. His explanation was that he appeared for White.

The suit from which this appeal comes was brought in chancery court by appellant to cancel the Turner deed. Appellee insists (and in this, we think, he is sustained) that W. J. White's deed to Lina C. White was executed in pursuance of a fraudulent intent to hinder creditors, and particularly to prevent appellee from collecting on his judgment.

White's testimony is that he had owned the land almost forty years; that its value was from $1,500 to $2,000; that he possessed no other real property, and that it had been his homestead from the time acquired.

Although the scheme to defraud seems to have been clearly established, there can be no actual fraud if the land was White's homestead. That its character was such until White went to Springfield is not seriously controverted. This trip and protracted stay of several months were in 1939. Testimony that White went to Springfield for the purpose of having his eyes treated, or that after reaching Springfield he concluded to procure treatment and submit to an operation, is undisputed. His absence from the Fulton county farm is referred to as "a few months," but this included November and December, 1939, when the execution was issued and the land sold.

That a homestead is not lost by the head of a family whose wife has died and whose children have moved was decided in *Gray* v. *Patterson,* 65 Ark. 373, 46 S. W. 730, 1119, 67 Am. St. Rep. 937. See, also, *Baldwin* v. *Thomas,* 71 Ark. 206, 72 S. W. 53. A headnote to the Baldwin case is: "One who has acquired a right of homestead as head of a family will not lose such right by subsequent loss of the family if he retains his residence thereon." Mr. Justice RIDDICK quoted from *Stanley* v. *Snyder,* 43 Ark. 429, where it was said: "When the association of persons which constitutes the family is broken up, whether by separation or the death of the members, the right of homestead continues in the former head of the family, provided he still resides at his old home."

In *United States Fidelity & Guaranty Company* v. *Smith,* 103 Ark. 145, 147 S. W. 54, Mr. Justice KIRBY said: "Appellant was not in a position to complain at the at-

tempted disposition of any part of appellant's homestead, whether by voluntary conveyance or otherwise, since it was not subject to the payment of its claim or judgment and, as to the homestead, there are no debts or creditors." [Citing *Hinkle* v. *Broadwater,* 73 Ark. 489, 84 S. W. 510, and *Ferguson* v. *Little Rock Trust Co.,* 99 Ark. 45, 137 S. W. 555, Ann. Cas. 1913A, 960.] Numerous other cases are to the same effect. Mr. Justice BATTLE, in *Isbell* v. *Jones,* 75 Ark. 591, 88 S. W. 593, declared the law to be that creditors cannot lawfully complain if a homestead is fraudulently conveyed. Then, quoting, he said: "[Creditors] could not reach [the property] if not conveyed, and the motive for the conveyance does not concern them."

It is argued that the deed from W. J. White to Lina C. White was ineffective because the grantor's acknowledgment was before Perry C. Goodwin; that on April 12, 1935, Goodwin pleaded guilty to fraudulent use of the mails and was sentenced to a term of eighteen months in prison. Goodwin's commission as a notary public, it is pointed out, was issued December 8, 1938. *Irby* v. *Day,* 182 Ark. 595, 32 S. W. 2d 157, is cited as authority for the contention that inasmuch as Goodwin was convicted of a crime his citizenship was lost, and he was not eligible to hold the office of notary public, the requirement being that such officer be an elector. *State* v. *Hodges,* 107 Ark. 272, 154 S. W. 506.

The answer to this argument is that an unacknowledged deed is good between the parties, if in other respects valid.

The record sustains what the chancellor must have found as a fact—that is, there was an intention to defraud. The law is well settled that a transaction of this nature cannot deprive the head of a family of his homestead. The reason is that since creditors have no interest in the homestead, any fraudulent manipulations between the owner and some third person are of no concern to the creditor. To lose a homestead, there must be some act from which the law will imply an intent to abandon. We do not think W. J. White intended to abandon the Fulton county property.

But while the design to abandon will not be implied, we are equally certain that the deed to Lina C. White was not the act of one who intended to convey; nor did the grantee, in receiving the deed, understand that the property was to become hers on condition that she pay $500 and care for the grantor during his remaining years. It is quite obvious that White adopted devious methods to "cover up," although the constitution afforded him the immunity desired. Without reviewing testimony from which the chancellor concluded the deed was fraudulent, it is sufficient to say that a preponderance of the evidence supports this view.

It follows that at the time the execution was levied and sale consummated, the owner's right of homestead attached. What, then, was the effect of confirmation by the circuit court?

*McKee* v. *Waters,* 166 Ark. 301, 265 S. W. 947, was a case where the appellee sued to set aside an execution sale affecting property found by the court to constitute a homestead. Waters acquired a patent from the United States. It was argued (1) that the debt for which execution issued became fixed before Waters received his patent, and (2) that the patentee was estopped to claim the land as a homestead because he remained silent while the sale was being made. In the opinion it was said that the contention was not sound because the statute (now § 7182 of Pope's Digest) permits a debtor "to select and claim his homestead after or before its sale on execution." The opinion then declares the law to be that the debtor may set up his right of homestead when suit is brought against him for possession by the purchaser at the sale.

This is not a possessory action; hence, W. J. White's right to interpose the homestead defense is premature. Appellant, being the holder of a fraudulent deed, has not an interest in the subject-matter, and the chancellor therefore correctly dismissed her complaint.

Affirmed.