JONES *v.* THOMPSON.

4-6831                                    166 S. W. 2d 1036

Opinion delivered December 7, 1942.

*James T. Gooch* and *Ross Mathis,* for appellant.

*J. Ford Smith* and *W. J. Dungan,* for appellees.

GRIFFIN SMITH, C. J. 1. Has a divorced man (who had an infant daughter when the decree was rendered in 1924) a homestead in lands devised to himself and others, subject to a life estate in the testator's wife, such remainderman having occupied the premises with his mother until she died in 1929?

2. Did the divorce, in consequence of which (a) the wife was given a third interest for life in her husband's undivided fourth interest in his father's estate; (subject

to rights of the remainderman's mother) and (b) was awarded custody of the daughter toward whose maintenance the father was directed to pay ten dollars monthly —did these facts, coupled with failure of the father to pay the maintenance judgment, or to account to his former wife for rents and profits from 1929 when the remainder vested, destroy the father's status as head of a family?

3. Did the chancellor err in finding that, although the remainderman resided on the undivided lands from 1929 until his interest was assigned in 1937; that he remarried at a time decidedly vague and did not establish a new domestic status on the property until lien of the judgment attached—was it error, in these circumstances, to hold that such judgment creditor's rights were prior to the so-called homestead it was claimed had been acquired with Wife No. 2?

4. Did the purchaser at the execution sale February 26, 1937, become a tenant in common?

5. Did the creditor's purchase from the state in 1938 for tax forfeitures of 1934 extinguish the rights of Wife No. 1?

These and other questions are presented by the appeal. A statement of essential facts appears in the margin.[1]

\* \* \*

[1] Stith M. Jones died testate in 1907 survived by children, and by his wife, Blanche M. Jones, who elected to take under the will. His real estate was devised to the wife for life. Stith M. Jones, Jr., a son of the testator, received by voluntary assignment and acceptance the share to which he was entitled. Paul M. Jones, another son, died during the life of the testator's widow, leaving two children. Other than the land assigned to Stith, Junior, the remainder was held in common by those favored in the will.

Blanche M. Jones died in March or April, 1929. September 12, 1932, Vance M. Thompson and others in business with him procured judgments against Reece W. Jones, Blanche Joy Jones McFayden, and Egbert Jones for a large sum. Thompson and his associates conducted a mercantile business and supplied farmers. February 3, 1937, an execution based on the judgment, which was revived in 1936, was delivered to the sheriff, and levy was upon lands involved in this appeal. Reece W. Jones, Blanche Joy Jones McFayden and Egbert A. Jones were treated as owners of an undivided one-fourth each. At the sale conducted February 26, 1937, Thompson's bid of $18,000 was accepted. The sheriff's certificate of purchase was issued March 14, 1938.

With receipt of his deed, Thompson immediately sued in eject-ment, naming Reece W. Jones as defendant and describing the lands he contended were being withheld from his possession.

September 12, 1938, Reece W. Jones answered Thompson's com-plaint. Ruby L. Jones filed an intervention and cross complaint, in which it was alleged that, after the death of Blanche M. Jones, estates in fee vested in the children and grandchildren. It was contended by the cross complaint and intervener that she married Reece W. Jones "in the month of July, 1932." They were, therefore, husband and wife when in September, 1932, Thompson procured his judgment. Further, it was alleged, the couple resided on the undivided lands. Their home was on the southwest quarter of the southeast quarter of section twenty-four and the west half of the northeast quarter of section twenty-five, township eight north, range three west. Other described lands of the estate were said to be contiguous.

Insistence is that the land in question constituted the homestead of Reece W. and Ruby L. Jones. There was a prayer for transfer to chancery.

As an exhibit to his amended complaint, Thompson attached the state's deed evidencing his purchase of the lands, forfeiture having been for 1934 taxes. The deed is dated January 10, 1938. Title in the state, the complaint averred, was confirmed May 9, 1938, under authority of Act 119 of 1935.

In the answer, cross complaint, and intervention of Reece W. and Ruby L. Jones, it was alleged that [January 17, 1924] Eliza-beth Jones, on her cross complaint to the action of Reece W. Jones, procured a decree of divorce, the marriage having been solemnized July 7, 1921. The decree awarded Elizabeth an undivided one-third interest in lands described. There was a finding by the court that Reece W. Jones was owner of an undivided fourth interest in the property, subject to the life estate of his mother, Blanche M. Jones. The estate awarded Elizabeth was for life. Custody of an infant daughter, Juliette, was given to the mother. There was judg-ment against Reece for $10 per month for support of the child, with right of visitation by the father at reasonable times.

The pleadings in which mention was made of Jones' first mar-riage, emphasized failure of Elizabeth to take possession of any part of the land. In his brief Reece says of the former wife that "she is probably barred by the statute of limitations, but that question has never been settled by agreement, or by order, judgment, or decree of any court." Finally, Reece stated the fact to be that there was par-tition of lands owned by Stith M. Jones, Sr., and "lands described in the complaint were awarded by final decree to Reece W. Jones, and other heirs claim no interest." The final proceeding in the partition suit was in 1937.

In an amendment to their answer and cross complaint, Reece and Ruby alleged that, inasmuch as Thompson purchased through the land commissioner January 10, 1938, and the decree confirming the state's title was not rendered until May 9 of the same year, the state had no title to confirm because Thompson had acquired the outstand-ing interest. There was the further averment that Thompson claimed to have previously purchased part of the lands, ". . . and these two defendants claim their homestead as part of the same, so that the said Vance M. Thompson was a tenant in common with the two defendants and could not purchase their interest at a tax sale or as forfeited lands."

August 18, 1939, Elizabeth [Aubrey Jones White], on behalf of herself and as natural guardian and next friend of Juliette, inter-vened. The marriage of 1921 was referred to, as was also the divorce

Was Reece W. Jones the head of a family within that contemplation of law which would entitle him to claim homestead rights; or, if the right existed, was it waived? After Elizabeth divorced him, Reece lived on the property with his mother until she died in April, 1929. His undivided interest became vested. Certainly, during the life tenant's possession the homestead now contended for did not attach. *Smith* v. *Watkins*, 187 Ark. 852, 62 S. W. 2d 41. It was there said that "No particular tract of the 320 acres was owned by any of [the remaindermen] until the termination of the life estate, and a partition of the land among the nine heirs." *Brooks* v. *Goodwin*, 123 Ark. 607, 186 S. W. 67, was cited as authority for the proposition that " . . . occupancy must be accompan-

and awards set out in the decree, as heretofore mentioned. Juliette, Elizabeth said, was born August 20, 1922, and was seventeen years of age when the intervention was filed. No part of the judgment for monthly payments of ten dollars had been discharged. It was further alleged that on September 13, 1937, the Woodruff chancery court, in a decree partitioning lands in which Blanche M. Jones formerly had a life estate, awarded Reece Jones the west half of the southwest quarter of section thirty, township eight north, range two west; southwest quarter of the southeast quarter of section twenty-four, township eight north, range three west; northwest quarter of the southeast quarter and the east half of the northeast quarter of the southwest quarter, and the west half of the northeast quarter of section twenty-five, township eight north, range three west.

Assignment was subject to the undivided third interest for life decreed to Elizabeth. The intervener (Elizabeth) also alleged that the tax sale to Thompson for 1934 forfeitures was void for the reasons mentioned in her former husband's answer. There was further contention that Reece had been in possession since 1929, collecting rents, and had failed to account. Six dollars per acre applicable to 120 acres in cultivation was a fair rental, she said; therefore $2,400 was due her, less taxes and reasonable allowances for repairs.

In answer to the cross complaint and other pleadings, Thompson denied that Reece and Ruby were married in July, 1932. The relationship of man and wife, he said, was not publicly assumed prior to March 7, 1933.

The chancellor's findings were that Thompson was entitled to possession of the land, subject to the undivided third interest for life awarded Elizabeth in 1924. The cross complaint of Reece and Ruby was dismissed for want of equity. Elizabeth's life estate was made subject to a lien in Thompson's favor for $296.16, covering taxes he had paid. Judgment in favor of Juliette was for $1,750. Commissioners were appointed to designate a third of the land on an equitable basis in favor of Elizabeth.

Reece W. and Ruby L. Jones appealed from that part of the decree finding in favor of Thompson. Thompson appealed from that part awarding Elizabeth a third interest for life. He also appealed from the court's action in allowing Elizabeth's attorney, J. Ford Smith, a fee of $300 and making it a lien on the land.

ied by a present claim of a right to occupy, and one can-not occupy an estate in remainder as a residence.'' This, it was held, was true because only the owner of a particular estate has the present right of occupancy ''essential to impress the homestead character upon the land.''

Elizabeth and Reece separated in April, 1922, although divorce was not decreed until 1924. Between 1922 and 1924 the daughter, Juliette, was born. Neither the mother nor child lived with Reece after 1922. In fact, the father testified he had not seen either since 1924.

It does not seem to have occurred to Reece when he answered Thompson's complaint that homestead should be claimed because of his status as a father. For some unexplained reason the daughter passed out of his life. A few payments were made on the monthly award of ten dollars intended for the child's benefit; but these stopped so many years ago that the accumulated delinquencies amounted to $1,750, for which judgment was given against Reece. He did not pay the former wife anything in satisfaction of the life interest she was given in the land. This, as is shown in the statement of facts appearing as a footnote, was claimed by Elizabeth to be $2,400.

It is true, therefore, that from April, 1929, until Ruby came to the farm, Reece was, to all outward appearances, a divorcee conducting his agricultural affairs as a single person, without weight of obligation insofar as the daughter was concerned. Neither had he, before June, 1933, confided to anyone that a second marriage had been consummated; and in the meantime Thompson's judgment became a lien unless Reece was head of a family, entitled to the property as a homestead, if the right had not been waived. And here, again, it is important to remember that the family status was predicated upon marriage to Ruby. The daughter was still forgotten.

Evidence regarding time of the second marriage is the testimony of Ruby and Reece that they went from Mississippi to St. Louis, where, Ruby says, the ceremony

was performed at the home of a Baptist minister. She and Reece remained in the city "several days." The wedding, Ruby testified, was on Sunday, July 2. Reece confirmed his wife's statement that they went to the home of a Baptist minister, but he did not remember the clergyman's name, nor what the house looked like, where it was, or in what building license was procured:— "I was directed: I just asked where to go, and was directed." He did not know where they stayed—at what hotel, and: —"I don't remember whether we left the same day, or the next."

Interrogatories answered by officials having exclusive custody of records of licenses issued in the City of St. Louis, and in the county, contradicted the claim of marriage in either jurisdiction. No license had been issued to Reece W. Jones or R. W. Jones to marry either Ruby L. Wright, or Ruby Lee Wright. A three-year period—1931, 1932, and 1933—was checked.

Returning to Arkansas, Reece says he went to his farm, and that Ruby joined her parents at their home south of McCrory. Question: "And you continued your residence that way until June, 1933?" Answer: "That is right."

Annie Wise, clerk for M. D. Thompson & Son (McCrory merchants) identified sales tickets representing purchases by Ruby, beginning June 23, 1933. It was also shown that the second of July in 1932 came on Saturday, and not on Sunday as Ruby had testified. D. M. Huff, as exhibits to his evidence, filed charge tickets showing that Reece was in the store July 2.

The Chancellor was justified in holding that a marriage consummated prior to the lien of Thompson's judgment had not been proved. Result is that the attempt to establish homestead rights failed unless the fact (incidentally developed) that Reece was a father entitled him to shift the ground of his claim and rely upon a strict construction of the law which would violate the principles of equity, and permit evasion of parental responsibility to prevail over the claims of a creditor, the justness of whose account is not questioned.

It is well established that as to a homestead there are no creditors. *White* v. *Turner,* 203 Ark. 95, 155 S. W. 2d 714. One who, as head of a family, has acquired a homestead, does not lose it by subsequent dissolution of the family if the claimant retains the property as a residence. *Baldwin* v. *Thomas,* 71 Ark. 206, 72 S. W. 53. In *Stanley* v. *Snyder,* 43 Ark. 429, it was held that when the association of persons which constitutes the family is broken up, whether by separation or the death of the members, "the right of homestead continues in the former head of the family, provided he still resides at his old home."

That a homestead acquired by a married person is not lost by his wife's divorce, though no family lives with the former husband, was held in *Butt* v. *Walker,* 177 Ark. 371, 6 S. W. 2d 301. [See cases collected under "Homestead," Arkansas Digest (West). §§ 154 *et seq.*]

But is is equally certain that the homestead may be abandoned, and whether abandonment has occurred is always a question of intention. *Gates* v. *Steele,* 48 Ark. 539, 4 S. W. 53. The exemption, it was said in *Barnhart* v. *Gorman,* 131 Ark. 116, 198 S. W. 880, is a personal one. It must be claimed by the party who seeks its benefits.

It is basic that if a court reaches the right conclusion by an erroneous reasoning, the judgment or decree will not be reversed because a wrong theory was followed, provided the cause was fully developed and the losing party was not misled.

In the instant case Reece Jones, knowing he was the father of a seventeen-year-old daughter; knowing that, unless the *status* should be waived he remained the head of a family within legal contemplation, though not in fact; fully cognizant of his right to test a claim to the homestead in question, yet conscious of having abdicated a position he had no intention of attempting to retrieve—in these circumstances he affirmatively declared himself the head of a family *because of a marriage he said was consummated July 2, 1932:* a marriage the chancellor, on ample evidence, found did not occur until

months later. No word of testimony communicates even a suggestion that if adjudged homestead rights Reece expected to discharge his obligation to the child—a daughter upon whose existence, coupled with what would be termed a strained quirk in construction, it is now sought to use, to amplify, and to dilate that which common sense must treat as a legal myth. It is a construction we cannot accept.

\* \* \*

The final question is, Did Thompson's purchase from the state extinguish Elizabeth's interest?

Following the 1924 divorce decree, Elizabeth and the child lived in Little Rock, then moved to Ft. Smith. Elizabeth married and is now Mrs. White. It is argued that she neglected "to pay any attention" to the land interest assigned her. This is inferentially contradicted by an answer Reece gave to the question, "Has [your former wife] ever made demand upon you to share with her or to pay to her anything from these lands?" He replied: "Well, there have been several court actions on that and I don't recall. Several times something has been brought up."

It was then conceded that no rents or profits had been paid; nor, on the other hand, had Elizabeth contributed to taxes or expense of repairs.

It must be borne in mind that when the life tenant named in the will of Stith M. Jones died in 1929, values were depressed; and net income from farm properties was non-existent except in rarest instances. Elizabeth had no claim from 1924 until April, 1929. The life estate of the testator's wife intervened. Therefore income from the property must have been small for several years. That Elizabeth did not unduly harass Reece when values became normal should not be urged as laches.

It was not until July 12, 1937, that final orders were made in the suit which set aside to Reece the land he now claims as exempt. Thompson was a party to the proceedings. There was a finding that ". . . Elizabeth Aubrey Jones White is the owner of an undivided one-

third interest for life of the lands [now assigned Reece Jones], as provided for in a decree of this court [rendered in 1924"].

Thereafter (January 10, 1938) Thompson purchased the state's title; and still later (May 9, 1938) the lands were included in the confirmation decree. Act 119 of 1935. Whether title in the state was good, or whether the collector's sale was voidable, passed from consideration with confirmation if there was power to sell.

While confirmation was pending Reece asked that the cause asserted against him by Thompson be consolidated with the state's suit, and this was done September 12, 1938.

Elizabeth, in her answer and cross complaint to the suit (consolidated with the state's foreclosure action at her former husband's request) challenged validity of the tax sale. This occurred less than a year from May 9, 1938. But, it is argued, Elizabeth did not deny knowledge that confirmation had been decreed, or make the tender required by § 6 of Act 119.

Although it is insisted a tender was made and that allegations necessary to confer jurisdiction were in the answer and cross complaint filed by Reece to Thompson's suit, we think these disputations are beside the issue and that Thompson's purchase through the land commissioner should be treated as a redemption.

\* \* \*

Thompson's purchase at the execution sale February 26, 1937, was subject to Elizabeth's interest. When the sheriff's deed was delivered March 14, 1938, it related back to the time of purchase. Four months after Thompson's bid was accepted, the partition decree was rendered; and, as has been said, Thompson was a party to that proceeding. He therefore became a tenant in common with Elizabeth, and Elizabeth had been a tenant in common with Reece. This seems to have been the view of the lower court, where judgment against Elizabeth was for $296.16. The judgment against Reece for $1,750 is not questioned; nor is the allowance of $300 to Elizabeth's

attorney a matter of controversy. Smith was employed by Elizabeth to look after her interests in the property, and not to seek partition; hence, § 10530 of Pope's Digest has no application. Neither is it contended that the chancellor's action in disallowing Elizabeth's claim for rents and profits was erroneous.

The decree is affirmed in all respects.

On rehearing Mr. Justice ROBINS concurs in the result, but not in all the declarations of law.

McFADDIN, J., concurring. Three essentials must concur to initiate the homestead right: (1) Legal occupancy; (2) intention; and (3) constitutional law. Reese Jones' *legal occupancy* could not have antedated his mother's death, because during her life he was only a remainderman and could not acquire a homestead in the property. *Brooks* v. *Goodwin*, 123 Ark. 607, 186 S. W. 67. He was not the head of a family within the meaning of the Constitution at any time from his mother's death until after the Thompson judgment was obtained. As a divorced husband deprived of the custody of his minor child, he lacked the *constitutional status* to create a homestead.

HOLT, J., dissenting. The primary question presented here is: Did Reece W. Jones have the right to claim the 80 acres in question here as his homestead, on the death of his mother in 1929: I think he had this right. Article 9, § 3 of our Constitution provides: "The homestead of any resident of this state who is married or the head of a family shall not be subject to the lien of any judgment or decree of any court or to sale under execution or other process thereof, except," etc., (the exceptions not being applicable to this case). The general rule in this state is that in determining who is the head of a family a liberal construction should be applied. In the recent case of *Yadon* v. *Yadon*, 202 Ark. 634, 151 S. W. 2d 969, this court said: "It is the settled policy of this court that our homestead laws are remedial and should be liberally construed to effectuate the beneficient purposes for which they were intended."

The undisputed facts here are that appellant, Jones, and his wife separated in 1922 and were divorced in 1924.

While the divorce suit was pending, the daughter, Juliette Jones, was born. Jones was living on this land with his mother at the time of the divorce and continued to reside thereon until he was evicted by this present suit. By the divorce decree appellant's wife was awarded the care and custody of their infant daughter, and appellant was ordered to pay $10 a month toward her maintenance. This order is still in effect. In these circumstances was appellant, Jones, the head of a family in the sense contemplated by the framers of the constitutional provision, *supra*, and under our general rule of liberal construction, such as would entitle him to the claim of homestead in the land in question? I think he was, and therefore clearly entitled to claim his homestead.

Although the custody of his minor child has been awarded to its mother and the child is not living with the father, Jones, the father, is not only morally bound, but it legally bound to support this child during its minority. It is undisputed that this child was a minor when appellant's mother died in 1929, when his homestead right attached, and was a minor when the present suit was filed. In these circumstances the general rule is stated in 26 American Jurisprudence, p. 127, § 205, under the general subject of "Homesteads," in this language: "Where property has been occupied by husband and wife in circumstances entitling the owner to claim the homestead exemption, the dissolution of the family as a consequence of divorce proceedings is held by some authorities not to terminate the right to set up the exemption as against the demands of creditors. The divorced husband is held not to lose the exemption if he remains liable for the support of children, and this is true where the custody of the children is awarded to the mother." In support of the text there is cited in footnote 13 an annotation in L. R. A. 1917C, p. 372. There the annotator says: "The court said that in *Hall* v. *Fields,* 81 Tex. 553, 17 S. W. 82, the object of the proceeding was to secure the use of the father's homestead to the minor children after his death, he having been divorced from their mother. The decree of divorce gave the custody of the minor children to the mother, and they actually lived with

her, yet the supreme court held that the divorced husband continued to be the head of a family, and was entitled to a homestead under the Constitution. Although the children did not live with him, they constituted a part of his family. It could not be that the children were entitled to the homestead unless the father was the head of a family at his death. . . . The case cited *(Hall* v. *Fields)* has not been questioned, and clearly settles the law to be that, although a man be divorced from his wife, and his children live separately and apart from him, his status as the head of a family is not lost. Therefore, his right to a homestead remains.'' The provision of the Texas Constitution on which the decision in *Hall* v. *Fields* is based is similar in effect to the corresponding provision, *supra,* in our own Constitution. This Texas case is squarely in point, is in accord with the general rule on the subject, and I think is in accord with the decisions of this court. In the instant case appellee did not obtain his judgment against appellant, Jones, until 1933, almost four years after appellant's mother had died in 1929, and appellant's undivided interest in his mother's land had attached. During all this time appellant was charged with the legal duty to support his infant daughter and was continuously living on the land as his homestead. In fact appellant, as has been indicated, had been living on this land continuously since 1921. It is well settled in this state that a homestead right may be acquired in undivided lands such as we have here. In *Robson* v. *Hough,* 56 Ark. 621, 20 S. W. 523, this court said: ''When real estate descends to several persons as tenants in common, one of whom is married and residing on the land with his family at the ancestor's death, intending to continue his residence on it when the descent is cast, the privilege of the homestead attaches to his interest in the land the instant the estate vests in him, and precludes his creditors from acquiring a judgment or execution lien upon the land, to be asserted as superior to the homestead right.''

It is my opinion, on the record before us, that appellant, Jones, is the head of a family and entitled to claim

his homestead. I, therefore, conclude that the cause should be reversed and remanded with directions.

Mr. Justice HUMPHREYS joins me in this dissent.