BANK OF SALEM *v.* WHITE.

4-7070                                                                   171 S. W. 2d 55

Opinion delivered May 10, 1943.

*H. A. Northcutt* and *Oscar E. Ellis,* for appellant.

*H. L. Ponder* and *H. L. Ponder, Jr.,* for appellee.

SMITH, J. An understanding of the issues involved on this appeal will be facilitated by a recital of the issues decided upon a former appeal, *White* v. *Turner,* 203 Ark. 95, 155 S. W. 2d 714.

As appears from that opinion, Johnson and Craig recovered a judgment against W. J. White for medical services rendered by them to White's wife. Being unable to collect this judgment they assigned it to T. H. Turner, who purchased the land here in litigation at the sale by the sheriff under an execution which issued upon this judgment. To defeat this debt, and without other consideration, as shown by the testimony upon the former appeal, White conveyed the land to the widow of his deceased son. This widow brought suit to cancel the execution deed to Turner. It was shown, practically without dispute, that the land had for forty years or more been the homestead of White. He reared his children there and it was his home when his wife died.

In the decree from which came that appeal the cause was dismissed as being without equity. There were two decrees in that record of identical import, except one of them awarded Turner a writ of possession.

The former opinion was delivered November 17, 1941, and four days later, or on November 21, 1941, White executed a mortgage to his daughter-in-law to secure a purported indebtedness of $1,000.

On June 29, 1940, Turner gave a mortgage on this land to the Bank of Salem. This was subsequent to the date of the execution deed to Turner. The bank filed suit to foreclose this mortgage on October 17, 1942. Turner had died and his heirs were made defendants in this foreclosure suit. Joined as defendants were W. J. White and Lina C. White, his daughter-in-law. Northcutt and Ellis, practicing attorneys, filed an intervention in this suit alleging that under a contract with Turner, pursuant to which they had represented him in this litigation, they had acquired one-half interest in the land. This branch of the litigation may be disposed of by saying that any interest in or title to the land by Northcutt and Ellis is dependent upon the validity of Turner's title.

It appears that White made an extended visit to his daughter-in-law, Lina C. White, who resided in Missouri, for the purpose of having his eyes treated, and that he

later removed to California, where he was residing when the foreclosure suit, above mentioned, was begun, and White was made a party to that litigation by the publication of a warning order, as was also his daughter-in-law, Lina C. White.

The complaint in the foreclosure suit alleged that the mortgage was a fraudulent conveyance, and its cancellation was prayed. It was also prayed that the mortgage from Turner to the bank be foreclosed.

White filed no answer, but did file a motion to dismiss the foreclosure proceeding alleging, in effect, that the opinion on the first appeal was decisive of the invalidity of the execution deed to Turner, that deed being void for the reason that the land was White's homestead at the time it was sold under the execution. It was further alleged that White had never abandoned his homestead, but had been wrongfully dispossessed, and it was prayed that possession of his homestead be restored to him.

It appears that a writ of possession, dated March 19, 1941, based upon the decree from which came the first appeal, was issued and served on that day. The return upon this writ shows service thereof and delivery of possession of this land to Turner. The return upon the writ recites ''That said W. J. White was in the possession of same at the time I took from him the possession and delivered to T. H. Turner the possession.''

The cause was heard on these pleadings, together with the reply to White's motion to dismiss which alleged the following reasons why the cause should not be dismissed. White had abandoned the land and, after selling his personal effects, had removed to another state. He did not show how, when or why he lost the possession which he asked restored; there was no allegation that he had not abandoned his homestead; White was not a party to the former appeal, and is not entitled to protection under the findings there made, and further that White had attempted and was attempting to fraudulently convey the land.

The fact recited in the return of the sheriff upon the writ of possession that he found White in possession of the land and had served the writ by ejecting White therefrom was not denied in the response to White's motion to dismiss. White was not a party to the former appeal but Turner was, and it was found and adjudged upon testimony, apparently undisputed, that the land had been White's homestead for many years.

It was further found on the former appeal that the deed from White to his daughter-in-law, who was the plaintiff in that case, was executed without consideration, for the fraudulent purpose of defeating the collection of the judgment against White, and the same thing may be true of the mortgage given by White to his daughter-in-law subsequent to the rendition of the opinion in that case. But it was held in that opinion that this was a fact of which the judgment creditor might not complain. Among other cases there cited and quoted from was that of *U. S. F. & G. Co.* v. *Smith,* 103 Ark. 145, 147 S. W. 54, in which case it was said: "Appellant was not in a position to complain of the attempted disposition of any part of appellant's homestead whether by voluntary conveyance or otherwise, since it was not subject to the payment of its claim or judgment and, as to the homestead, there are no debts or creditors."

The record in this, and in the former, appeal, discloses that this is basically an attempt to sell a homestead in satisfaction of a judgment rendered upon a debt entered into by contract. It is true no claim of homestead was made until after the execution sale, but the law does not require that it should be. This claim of a homestead may be asserted at any time when it is sought to dispossess the owner of the homestead. *McKee* v. *Waters,* 166 Ark. 301, 265 S. W. 947. The statute expressly confers this right, § 7182, Pope's Digest.

The decree appears to be correct, under the pleadings, and it is, therefore, affirmed.